# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CALVIN E. BRACKBILL,** | : | CIVIL ACTION NO. 1:17-CV-1046 |
| **Plaintiff** | : | (Chief Judge Conner) |
| v. | : | |
| **STEPHEN J. RUFF, GREGORY A. HILL, IAN L. DAWSON, TYRON E. MEIK, and CITY OF HARRISBURG, PA,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Calvin E. Brackbill ("Brackbill") filed suit under 42 U.S.C. § 1983 alleging multiple constitutional violations against various police officers and the City of Harrisburg, Pennsylvania. Brackbill also asserts related state law tort claims. Defendants move to dismiss Brackbill's complaint in part under Federal Rule of Civil Procedure 12(b)(6). (Doc. 18). The court will grant in part and deny in part defendants' motion.

## I. Factual Background & Procedural History

Around 3:20 a.m. on June 28, 2015, Brackbill was driving home from work through Harrisburg, Pennsylvania, when he noticed a noise coming from the front of his vehicle. (Doc. 16 ¶¶ 10, 11, 15). He pulled over to investigate the sound and discovered that a portion of his decorative front bumper cover had come loose. (Id. ¶¶ 11, 12).

Three Harrisburg Bureau of Police officers were nearby investigating an unrelated incident: Stephen J. Ruff ("Officer Ruff"), Gregory A. Hill ("Officer Hill"),

and Tyron E. Meik ("Corporal Meik"). (Id. ¶¶ 17-18). Officer Ruff and Officer Hill approached Brackbill and questioned him about how much he had had to drink and what he had hit with his vehicle. (Id. ¶¶ 18-19). Brackbill—dressed in his work uniform and wearing a name tag—responded that he was driving home from work, had not had anything to drink, and had not hit anything with his vehicle that night. (Id. ¶¶ 16, 20). He further explained that he had been involved in a minor accident in January in which he slid on ice and hit a curb, which may have precipitated his bumper cover coming loose. (Id. ¶ 21).

Officer Hill stated twice that he smelled the odor of alcoholic beverages. (Id. ¶ 22). When Brackbill asked to speak with a supervisor, the officers directed him to an approaching SUV driven by Corporal Meik. (Id. ¶¶ 23-24). Brackbill explained the situation to Corporal Meik, who responded simply that Brackbill "had been drinking." (Id. ¶ 25). Officer Ruff then handcuffed Brackbill and placed him under arrest for driving under the influence. (Id. ¶¶ 27-28).

No breathalyzer or field sobriety tests were performed. (Id. ¶ 29). When Brackbill asked the officers to conduct on-site testing to confirm that he had not been drinking, the officers responded that they "did not have time." (Id.) Ian L. Dawson ("Officer Dawson") then arrived in a police transport van and drove Brackbill to the judicial center for processing. (Id. ¶¶ 31-32).

At the judicial center, Brackbill was fingerprinted, photographed, searched, and locked in a cell. (Id. ¶¶ 33, 39-40). He also had his blood drawn to be submitted for toxicology testing. (Id. ¶¶ 36, 38). After being incarcerated for four hours, Brackbill was released and learned that his vehicle had been towed. (Id. ¶¶ 40, 45).

2

Shortly thereafter, he complained in person about the incident to Thomas Carter, Chief of the Harrisburg Bureau of Police ("Chief Carter"). (Id. ¶ 46).

Brackbill's toxicology report, dated July 19, 2015, revealed a blood alcohol content of 0.00% and no unlawful drugs. (Id. ¶ 47). Brackbill attempted multiple times to speak with Chief Carter after receiving the toxicology results but was not permitted to meet with him. (Id. ¶¶ 48-52). At one point, Brackbill was told that if he returned to the police department, he would be arrested for trespass. (Id. ¶ 52).

On July 26, 2015, Officer Ruff filed two summary traffic citations against Brackbill. (Id. ¶ 53). The first citation was for "Required Financial Responsibility" pursuant to 75 PA. STAT. AND CONS. STAT. § 1786(f), for allegedly operating a motor vehicle without proper insurance. (See Doc. 16-4 at 1). The second was for "Operating a Vehicle with Unsafe Equipment" pursuant to 75 PA. STAT. AND CONS. STAT. § 4107(b)(2), for allegedly violating a regulation codified at 67 PA. CODE § 175.78(e)(i), which requires that "[a] bumper shall be of at least equivalent strength and mounting as the original equipment." (See Doc. 16-1 at 2).

Brackbill hired counsel and contested the citations before a magisterial district judge. (Doc. 16 ¶ 59; see generally Doc. 16-5). After a hearing, the magisterial district judge dismissed the Section 1786(f) insurance citation but found Brackbill guilty of the Section 4107(b)(2) citation regarding the bumper issue. (Doc. 16 ¶ 63; Doc. 16-5 at 29). Brackbill appealed the decision to the Court of Common Pleas of Dauphin County, Pennsylvania. (Doc. 16 ¶ 64; see generally Doc. 16-6). The court found him not guilty of the Section 4107(b)(2) offense and dismissed that citation as well. (Doc. 16 ¶ 64; Doc. 16-6 at 2).

3

After both citations were dismissed, Brackbill filed this suit against the officers and the City of Harrisburg (collectively, "defendants"). He alleges the following: false arrest in violation of the Fourth Amendment against Officer Ruff (Count I); excessive force in violation of the Fourth Amendment against Officer Ruff (Count II); failure to intervene in violation of the Fourth Amendment against Officer Hill, Officer Dawson, and Corporal Meik (Count III); a Fourteenth Amendment Due Process claim against Officer Ruff for fabricated evidence (Count IV); Fourth and Fourteenth Amendment violations against Corporal Meik under a supervisory liability theory (Count V); Fourth and Fourteenth Amendment violations against the City of Harrisburg under municipal liability theory (Count VI); a state law tort claim of battery against Officer Ruff (Count VII); a state law tort claim of malicious prosecution against Officer Ruff (Count VIII); a state law tort claim of abuse of process against Officer Ruff (Count IX); and state law tort claims of intentional infliction of emotional distress against Officer Ruff, Officer Hill, Officer Dawson, and Corporal Meik (Count X). Defendants move to dismiss many of Brackbill's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable

4

reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[]

5

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil-rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 252-53, but leave is broadly encouraged "when justice so requires." FED. R. CIV. P. 15(a)(2).

## III. Discussion

Defendants attack the sufficiency of Counts I, II, III, IV, V, VI, and X of Brackbill's amended complaint. They also assert qualified immunity as a defense to Counts I through IV. We begin our analysis with Brackbill's various constitutional claims against the individual defendants.

### A. Individual Constitutional Claims

Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d

6

1137, 1141 (3d Cir. 1995)). The individual defendants do not dispute that they are state actors. We must thus assess whether Brackbill alleges that any defendant deprived him of rights secured by the United States Constitution.

### 1. *Count I – False Arrest*

To maintain a claim for false arrest under Section 1983, a plaintiff must show that he was arrested without probable cause to believe that he committed "any offense that could be charged under the circumstances." Johnson v. Knorr, 477 F.3d 75, 85 (3d Cir. 2007) (quoting Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)). Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge would convince a reasonable person that the person arrested has committed an offense. Dempsey v. Bucknell Univ., 834 F.3d 457, 467 (3d Cir. 2016) (citation omitted). Whether probable cause to arrest exists is an objective determination; the arresting officer's subjective intentions are irrelevant. Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003) (citing Whren v. United States, 517 U.S. 806, 813 (1996)). The question of probable cause in Section 1983 claims is "necessarily fact-intensive" and will generally be reserved for the jury. Dempsey, 834 F.3d at 468; Estate of Smith, 318 F.3d at 514 (citation omitted).

Defendants first contend that Brackbill's amended complaint definitively demonstrates probable cause to arrest. They claim that Brackbill "concedes that a portion of his bumper dragged on the pavement," and that under Pennsylvania law—specifically, 75 PA. STAT. AND CONS. STAT. § 4107(b)(2), incorporating either 67

7

PA. CODE § 175.77(d) or § 175.78(e)(2)[1]—Officer Ruff had probable cause to believe that Brackbill had violated the vehicle code. (Doc. 19 at 15). Brackbill counters that he never conceded that a portion of his bumper dragged on the pavement. Rather, his pleading stated that his bumper fully complied with state law requirements and only his decorative bumper *cover* had come loose due to the detachment of several plastic tabs. He further asserts that no Pennsylvania regulations govern decorative bumper covers.

We find that Brackbill's amended complaint sufficiently pleads a lack of probable cause. In particular, Brackbill has pled that he heard his bumper cover scraping against the ground and, on his own volition, pulled his car over to the curb to investigate the noise. Only later did the officers walk down to where he was parked and inspecting the bumper cover to question him about whether he had struck something with his vehicle or had been drinking. Brackbill also specifically pleads that the officers had "*no* evidence of any traffic violation or crime having been committed." (Doc. 16 ¶ 26).

These facts, taken as true, do not categorically demonstrate that probable cause existed to arrest Brackbill without a warrant for a vehicle code violation. The

---

[1] Brackbill was not cited for violating Section 175.77(d) or Section 175.78(e)(2) of the Pennsylvania Code; his citation referenced Section 175.78(e)(1). (See Doc. 16-4 at 2). Section 175.77(d) states, in pertinent part, "There may be no torn metal, glass or other loose or dislocated parts protruding from the body of the vehicle." 67 PA. CODE § 175.77(d). Section 175.78(e)(2) states, "No portion of the bumper may be broken, torn or protruding to create a hazard." Id. § 175.78(e)(2). Because the analysis for a false arrest claim requires consideration of "*any* offense that *could be* charged under the circumstances," Johnson, 477 F.3d at 85 (emphasis added), these sections are properly considered for the false arrest claim.

8

statutory offense defendants invoke makes it unlawful to "operate" a vehicle "when the "vehicle . . . is . . . in violation of department regulations." 75 PA. STAT. AND CONS. STAT. § 4107(b)(2). The facts pled do not establish that Officer Ruff observed Brackbill operating the vehicle in a condition that was violative of the regulations to which defendants cite. On the facts alleged, we cannot say that Officer Ruff had probable cause for arrest.

Defendants alternatively suggest that qualified immunity shields Officer Ruff from Brackbill's false arrest claim. Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. See Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). No liability will attach if a reasonable actor could have believed the challenged conduct was in compliance with settled law. Id.; see also Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006). A court evaluating a claim of qualified immunity considers two distinct inquiries: whether, based on the record evidence, a constitutional right has been violated and, if so, whether the right was "clearly established" at the time of the alleged violation. See Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232). The burden to establish qualified immunity rests with the defendant claiming its protection. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

Defendants contend that "the clearly established law did not prohibit an arrest for an apparent violation of the vehicle code." (Doc. 19 at 15). According to defendants, "Officer Ruff made a reasonable call in deciding that the bumper cover is part of a bumper," and thus had probable cause to arrest Brackbill without a

9

warrant for the above-referenced traffic violation. (Doc. 21 at 4). We decline to decide at this time whether qualified immunity bars Brackbill's false arrest claim. The constitutional right at issue here is to be free from arrest in the absence of probable cause. See Andrews v. Scuilli, 853 F.3d 690, 705 (3d Cir. 2017) (citing Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995)). This right was clearly established at the time of Brackbill's arrest. Id. But, as noted above, it is unclear whether Office Ruff's conduct violated Brackbill's rights. The facts in the amended complaint do not establish probable cause to effect a warrantless arrest for a vehicle code violation. Therefore, we cannot determine at this time whether qualified immunity bars Brackbill's false arrest claim against Officer Ruff.

### 2. *Count II – Excessive Force*

A police officer's use of force is "excessive" and contravenes the Fourth Amendment when it is objectively unreasonable under the circumstances. Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002) (citing Graham v. Connor, 490 U.S. 386 (1989)). Factors to be considered in making this determination include

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, . . . whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight[,] . . . the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir. 2006) (final alteration in original) (internal citations and quotation marks omitted).

Brackbill argues that Officer Ruff's use of force "to effect an unlawful arrest" was *per se* excessive and thus violative of the Fourth Amendment. (Doc. 20 at 6). The problem with Brackbill's theory is that the Third Circuit has unequivocally rejected it. In <u>Snell v. City of York</u>, 564 F.3d 659 (3d Cir. 2009), the plaintiff made an identical argument that the force applied during his arrest "was excessive solely because probable cause was lacking for his arrest." <u>Snell</u>, 564 F.3d at 672. The Third Circuit rebuffed this claim, noting that courts have repeatedly "rejected similar efforts to bootstrap excessive force claims and probable cause challenges." <u>Id.</u> (collecting cases). Accordingly, Brackbill's excessive force claim as pled fails as a matter of law and must be dismissed.

### 3. *Count III – Failure to Intervene*

The Third Circuit has recognized that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983." <u>Smith v. Mensinger</u>, 293 F.3d 641, 650 (3d Cir. 2002); <u>see</u> also <u>Baker v. Monroe Township</u>, 50 F.3d 1186, 1193-94 (3d Cir. 1995). Yet liability only obtains "if there is a realistic and reasonable opportunity" for the officer to intervene. <u>Mensinger</u>, 293 F.3d at 651 (citations omitted). Brackbill alleges that Officer Hill, Officer Dawson, and Corporal Meik each had a "realistic and reasonable opportunity" to prevent his unlawful arrest and end his "unlawful detention and transport" but that all three officers failed to do so. (Doc. 16 ¶¶ 81-82).

Defendants first contend that Brackbill has failed to show that Officer Hill and Officer Dawson "had the authority" to intervene and prevent Brackbill's arrest.

11

(Doc. 19 at 17-18). This argument is meritless. The law conclusively establishes that police officers, "whether supervisory or not," have a duty to intervene to prevent constitutional violations if they have the opportunity. Mensinger, 293 F.3d at 650.

Defendants next assert that Brackbill's allegations are conclusory and lack specificity. We find that the facts pled are sufficient to state a failure-to-intervene claim as to Officer Hill and Corporal Meik, but not as to Officer Dawson.

Brackbill alleges that Officer Ruff and Officer Hill arrived at the same time and questioned him about drinking and about what he had supposedly hit with his vehicle. Officer Hill was present for Brackbill's explanations. Corporal Meik was also on the scene and spoke directly with Brackbill about the incident. Both officers were present when Officer Ruff handcuffed and arrested Brackbill and, according to the complaint, were involved in the decision to make the warrantless arrest. These facts, if proven at trial, would demonstrate that Officer Hill and Corporal Meik knew what was happening, were present at the scene for an extended time or the entire time, heard Brackbill's answers and explanations, and took no action to prevent Officer Ruff from arresting Brackbill. It can be inferred from these allegations that Officer Hill and Corporal Meik had a "realistic and reasonable opportunity" to prevent the allegedly unlawful arrest but failed or refused to intervene.

Officer Dawson, *per contra*, simply "arrived in a police transport van" to transport Brackbill to the judicial center, presumably at the request of one or several of the officers on the scene. (Doc. 16 ¶¶ 31-32). The nature of Officer

Dawson's limited involvement is insufficient to support a plausible failure-to-intervene claim. Therefore, Count III must be dismissed as to Officer Dawson.

Defendants, in passing, alternatively assert qualified immunity "because their conduct did not violate clearly established law." (Doc. 19 at 18). We decline to address qualified immunity for two reasons. First, the assertion is completely undeveloped and unsupported by legal authority. Second, the law regarding failure to intervene was "clearly established" in the Third Circuit at the time of Brackbill's arrest. See Mensinger, 293 F.3d at 650-51. Consequently, there are outstanding issues of fact that must be resolved before the court could decide whether any defendant violated Brackbill's clearly established constitutional right.

### 4. *Count IV – Procedural Due Process*

In Black v. Montgomery County, 835 F.3d 358 (3d Cir. 2016), the Third Circuit recognized a stand-alone procedural due process claim for fabrication of evidence. The court held that an acquitted criminal defendant may have a stand-alone cause of action under the Fourteenth Amendment if (1) a state actor fabricated evidence against the defendant, and (2) "there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." Black, 835 F.3d at 371. To meet the "reasonable likelihood" standard, the plaintiff must establish a "meaningful connection" between his due process injury and the use of fabricated evidence against him. Id. (citing Halsey v. Pfeiffer, 750 F.3d 273, 294 n.19 (3d Cir. 2014)).

Brackbill contends that Officer Ruff falsely stated in his traffic citations that Brackbill did not have automotive insurance and that he had operated a vehicle

13

with unsafe equipment. (Doc. 16 ¶ 85). Brackbill further alleges that Officer Ruff testified falsely under oath "that the entire front bumper of [Brackbill's] vehicle had fallen off," and that he had observed Brackbill pushing the bumper while driving the vehicle. (Id. ¶ 86). Brackbill posits that, but for this fabricated evidence, he would not have been charged. Defendants rejoin that Brackbill's criminal charges were not based on fabricated evidence, that the standard for proving that evidence is fabricated is a high bar, and that Brackbill cannot demonstrate a "meaningful connection" between his injury and the use of fabricated evidence.

Defendants' arguments go to the merits of this due process claim and are inappropriate at the motion to dismiss stage. At this juncture, Brackbill does not need to prove that Officer Ruff fabricated evidence or to prove causation under the "meaningful connection" standard. Rather, Brackbill must set forth well-pled factual allegations sufficient to show a plausible claim for relief. Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556).

Brackbill's complaint satisfies this pleading threshold. His allegations that Officer Ruff made knowingly false statements in traffic citations and during his hearing testimony before the magisterial district judge qualify as "fabrication" of evidence. Officer Ruff was the only officer to issue citations and the only witness to testify for the Commonwealth, thus establishing a "meaningful connection" between the fabricated evidence and Brackbill's alleged due process injury. And Brackbill has pled (and supported through exhibits) that he was acquitted of the charges. Consequently, Brackbill's Fourteenth Amendment due process claim survives Rule 12(b)(6) scrutiny.

14

Defendants again cursorily assert qualified immunity, claiming that Brackbill's "novel bumper cover argument would be breaking new ground." Because this assertion is likewise undeveloped and unsupported, we decline to consider it. We note, however, that fabricating evidence to support criminal charges would contravene clearly established constitutional due process rights. See Halsey, 750 F.3d at 295-96. As with the balance of Brackbill's claims against the individual defendants, a qualified immunity assessment is premature at this juncture.

### B. Counts V & VI – Supervisory and Monell Liability

In Counts V and VI, Brackbill asserts claims under the Fourth and Fourteenth Amendments against Corporal Meik and the City of Harrisburg. Brackbill claims that Corporal Meik is subject to supervisory liability for the unlawful arrest because he was present and permitted and ratified the conduct of Officer Ruff. He contends that the City of Harrisburg is liable for the constitutional violations because it "ratified the conduct of the Individual Defendants by not dismissing the false citations, and by not disciplining and/or retraining said Defendants." (Doc. 16 ¶ 97). We address Brackbill's claims against Corporal Meik and the City of Harrisburg *seriatim*.

#### 1. *Supervisory Liability – Corporal Meik*

A supervisory defendant in a Section 1983 action cannot be held liable merely on a theory of *respondeat superior*. Parkell v. Danberg, 833 F.3d 313, 330 (3d Cir. 2016) (citation omitted). Supervisory liability will attach in only one of two ways: *first*, when a supervisor "established and maintained a policy, practice, or custom

which directly caused the constitutional harm," and *second*, when the supervisor either participated in or directed the alleged violation, or "had knowledge of and acquiesced in their subordinates' violations." Id. (quoting Santiago, 629 F.3d at 129 n.5).

Brackbill asserts an acquiescence claim against Corporal Meik. According to the amended complaint, Corporal Meik "was a field supervisor," was present at the scene of the incident, was informed of the situation and spoke directly with Brackbill regarding his version of events, participated in making the decision to arrest, and knowingly permitted Officer Ruff to make the allegedly unlawful arrest, thereby ratifying Officer Ruff's unlawful conduct. Defendants offer no rebuttal to this claim. They focus exclusively on the first mode of establishing supervisory liability, arguing that Brackbill has not shown that Corporal Meik established a policy or custom that directly caused the constitutional harm. We therefore find that Brackbill has sufficiently pled a claim of Section 1983 supervisory liability against Corporal Meik.

### 2. *Municipal Liability – City of Harrisburg*

Municipalities and other local governments are "persons" for purposes of Section 1983 liability, see Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978), but such entities are not responsible for every constitutional tort inflicted by their employees, Connick v. Thompson, 563 U.S. 51, 60 (2011). Municipalities are only responsible for "their *own* illegal acts." Id. (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). To bring a Section 1983 claim against a municipality, the plaintiff must show that "the alleged constitutional transgression implements or executes a

policy, regulation[,] or decision officially adopted by the governing body or informally adopted by custom." Mulholland v. Gov't Cty. of Berks, 706 F.3d 227, 237 (3d Cir. 2013) (citation omitted). In other words, a plaintiff can establish Section 1983 municipal liability in two ways: policy or custom. Watson v. Abington Township, 478 F.3d 144, 155 (3d Cir. 2007); Santiago, 629 F.3d at 135. The Third Circuit has explained that, to prove liability, the plaintiff must establish that the municipal policy or custom was itself unconstitutional, or was the "moving force" behind the constitutional deprivation. Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted).

Brackbill relies on the "policy" path of the "two-path track" to Section 1983 municipal liability. See Mulholland, 706 F.3d at 237. A "policy" for purposes of Section 1983 "includes official proclamations made by a municipal decisionmaker with final authority[.]" Kelly v. Borough of Carlisle, 622 F.3d 248, 263 (3d Cir. 2010) (citation omitted). Whether someone is a "final policymaker" for Monell liability is a legal, rather than factual, question, Santiago, 629 F.3d at 135 n.11, and turns on state law, Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 738 (1989) (citation omitted).

Brackbill alleges that Chief Carter is a "policymaker," that Chief Carter was informed of the unlawful arrest but took no action, that the Harrisburg city solicitor was put on notice of the unlawful arrest and unlawful citations, and that the city "ratified" the individual defendants' conduct by failing to dismiss the citations or to discipline the individual defendants. (Doc. 16 ¶¶ 94-97). This argument conflates policy with custom. Acquiescence to a recurring unconstitutional practice can create a "custom." Kelly, 622 F.3d at 263; Berg v. County of Allegheny, 219 F.3d 261,

17

275-76 (3d Cir. 2000). A policy, on the other hand, refers to an official proclamation, policy, or edict—either itself facially unconstitutional or the moving force behind a constitutional violation—issued by a final decisionmaker or properly delegated agent. See Berg, 219 F.3d at 275-76.

The amended complaint is devoid of facts that would plausibly show that Chief Carter or another final decisionmaker[2] created and implemented an unconstitutional policy. Moreover, the mere fact that Chief Carter or the city solicitor purportedly agreed with Officer Ruff's allegedly unlawful arrest does not plausibly state a municipal liability claim. See Kelly, 622 F.3d at 264-65. "Simply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." Id. at 264. Accordingly, Count VI fails to state a claim for relief and must be dismissed.

### C. Count X – Intentional Infliction of Emotional Distress

In Brackbill's final count, he asserts state law tort claims of intentional infliction of emotional distress against the four individual defendants. As the basis for these claims, Brackbill essentially repeats the allegations underlying many of the previous claims of his amended complaint. (See Doc. 16 ¶¶ 124-31).

A claim for intentional infliction of emotional distress requires proof that: (1) the defendant's conduct was extreme and outrageous; (2) the conduct caused

---

[2] We do not decide at this time whether Chief Carter or the city solicitor is a "final policymaker" for Section 1983 purposes. That determination turns on state law and could also implicate issues of fact such as the official's "responsibilities and decisionmaking authority with respect to the conduct at issue." Kelly, 622 F.3d at 264-65. The parties have not briefed these issues, and a decision on the instant motion to dismiss does not depend on their resolution.

the plaintiff severe emotional distress; and (3) the defendant acted intending to cause such distress or with knowledge that same was "substantially certain" to occur. Brown v. Muhlenberg Township, 269 F.3d 205, 217-18 (3d Cir. 2001) (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (AM. LAW. INST. 1965)).[3] Whether conduct could reasonably be regarded as extreme and outrageous is a threshold inquiry for the court's determination. M.S. *ex rel.* Hall v. Susquehanna Twp. Sch. Dist., 43 F. Supp. 412, 430 (M.D. Pa. 2014) (citing Reimer v. Tien, 514 A.2d 566, 569 (Pa. Super. Ct. 1986)). The Supreme Court of Pennsylvania has cited approvingly the Superior Court's requirement that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (alteration in original) (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).

Under no reading of Brackbill's amended complaint can we say that the actions alleged were "beyond all possible bounds of decency" or "utterly intolerable in a civilized society." Even if Brackbill's arrest were unlawful, his allegations still fall well short of the requisite showing of outrageous conduct required to state a

---

[3] The Pennsylvania Supreme Court has not yet explicitly recognized the tort of intentional infliction of emotional distress. See Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000). The Third Circuit has predicted that the state's high court will ultimately adopt the Restatement (Second) of Torts' formulation. Williams v. Guzzardi, 875 F.2d 46, 50-51 (3d Cir. 1989); see also Mills v. City of Harrisburg, 589 F. Supp. 2d 544, 558 n.13 (M.D. Pa. 2008) (citing Taylor, 754 A.2d at 652).

plausible claim for intentional infliction of emotional distress under Pennsylvania law. Id. Accordingly, Count X fails to state a claim for relief and must be dismissed.

## IV. Conclusion

The court will grant in part and deny in part defendants' motion (Doc. 18) to dismiss. Because Brackbill's claims are factually rather than legally deficient, the court will grant Brackbill leave to amend any dismissed claim. See Grayson, 293 F.3d at 108; Fletcher-Harlee Corp., 482 F.3d at 251. An appropriate order shall issue.

/S/ Christopher C. Conner
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: May 22, 2018