IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CALVIN E. BRACKBILL<br>    Plaintiff. | : TRIAL BY JURY<br>:<br>: CIVIL ACTION NO.: 1:17-cv-01046-JPW |
| v. | :<br>: |
| STEPHEN J. RUFF, et al.<br>    Defendants | :<br>: |

**STATEMENT OF UNDISPUTED FACTS**

Comes now, Plaintiff, for purposes of Summary Judgement only and in Compliance with Local Rule 56.1, accepts Defendants' version of events as material undisputed facts of record as true, and therefore does not present any evidence contradicted by the Plaintiff. The deposition of Defendant Stephen Ruff is attached as Exhibit A.

Material Undisputed Facts:

1. Defendant Ruff interacted with Plaintiff on June 28th, 2015 at approximately 3:00 a.m. (Ruff Dep. at 5).

2. The interaction is the subject of the instant matter before the Court. (Ruff Dep. at 5)

3. Defendant Ruff claims he may have made mistakes in the interaction with the Plaintiff (Ruff Dep. at 5).

4. Defendant Ruff accepts responsibility that this was a "bad" arrest. (Ruff Dep. at 93).

5. Defendant Ruff thinks it could have been a "better" arrest. (Ruff Dep. at 93).

6. Defendant Ruff agree this was an invalid arrest for Driving Under the Influence. (Ruff Dep. at 94).

7. Further, Defendant Ruff accepts responsibility for the invalid arrest. (Ruff Dep. at 94).

8. Defendant Ruff admits the only factors he considered in his probable cause analysis to arrest Plaintiff were: Plaintiff pushed his bumper with his car for one and a half blocks,

1

Plaintiff was aggressive and irritable with police on the scene, Police Officer Hill smelled alcohol on Plaintiff, and the time was approximately 3:00 a.m. (Ruff Dep. at 95).

9. Defendant Ruff admits he could have handled the situation better, but he does not think he did anything wrong. (Ruff Dep. at 102).

10. Defendant Ruff admits he had no more than suspicion of Driving under the Influence (Ruff Dep. at 105).

11. Further, Defendant Ruff admits he made mistakes in this case. (Ruff Dep. at 6).

12. Defendant Ruff stated he "probably could have tried to slow down the incident and try to get more facts before making a decision." (Ruff Dep. at 6).

13. Defendant Ruff stated, "if I was able to calm him down and try to have a rational conversation with him, we probably wouldn't be here today." (Ruff Dep. at 7).

14. Defendant Ruff stated, "if he was able to explain to me whatever instance led to him – the damage to his car that caused the bumper to fall off that night and that he was just trying to get home and he was coming from work, I would have been like, okay, man, get out of here, just get your car fixed." (Ruff Dep. at 7).

15. Upon further questioning:

> Q. So had you had more facts, you would not – you probably would not have arrested him; is that right?
> A. I probably would not have arrested him.

(Ruff Dep. at 8).

16. Further, Defendant Ruff is aware the term suspicion of DUI is not a legal term under Pennsylvania law, but just a term used by police officers. (Ruff Dep. at 9).

17. And, when Defendant Ruffs takes a person to the station for Suspicion of DUI, its actually an arrest for DUI. (Ruff Dep. at 9).

18. Further, Defendant Ruff admits he never saw Plaintiff ever actually driving the vehicle. (Ruff Dep. at 11, 20).

19. Defendant Ruff admits he did not smell alcohol on Plaintiff, only that he was *told* by Defendant Hill that he smelled alcohol on Plaintiff (Ruff Dep. at 6), but Defendant Ruff did not smell alcohol on Plaintiff. (Ruff Dep. at 59).

20. Defendant Ruff transported Plaintiff to the police station for a blood draw. (Ruff Dep. at 22).

21. Defendant Ruff performed Plaintiff's blood draw. (Ruff Dep. at 22).

22. Plaintiff's blood tested negative for alcohol and controlled substances. (Ruff Dep. at 22).

23. Defendant Ruff did not use a portable BAC on Plaintiff because Defendant Ruff did not have a portable BAC in his police cruiser. (Ruff Dep. at 22).

24. In fact, Plaintiff was never breathalyzed. (Ruff Dep. at 23).

25. After Defendant Ruff received the negative blood results, he realized this was a bad arrest. (Ruff Dep. at 26).

26. Defendant Ruff accepts responsibility for the bad arrest. (Ruff Dep. at 26).

27. Plaintiff was never charged with DUI. (Ruff Dep. at 28).

28. Further, when questioned on specific factors for the totality of circumstance analysis of probable cause in regard to a DUI arrest, Defend Ruff testified as follows:

> Q. On the -- on the night in question you didn't observe any bad driving on the part of Mr. Brackbill, did you?
> A. No.
> Q. You didn't see him speed or blow any red 19 lights or stop signs, right?
> A. No.
> Q. You didn't see him in an accident, did you?
> A. No.
> Q. Okay. And once he was out of the car, he was able to speak clearly, wasn't he?

A. He was -- I don't recall. There was a lot of -- there was a lot of yelling, so I can't really remember.
Q. There was no slurred speech though, right?
A. I don't recall.
Q. If there was slurred speech on a DUI arrest, you would have indicated it in your report, wouldn't you?
A. Correct.
Q. Okay. And you did not indicate that in your report in this case, right?
A. No.
Q. Okay. And you didn't notice bloodshot eyes, right?
A. I don't recall.
Q. Well, it was not in your report, was it?
A. No.
Q. And if it was on a DUI case, you would have put it in, right?
A. Yes.
Q. Okay. And you did not do any kind of like horizontal eye test where someone follows your eye with like a flashlight or your finger or anything like that; you didn't do that in this case, did you?
A. I was not trained. At that point his attitude and the wet ground did not provide a suitable environment to complete those tests.
Q. Okay. So the answer to my question is no, you didn't do that test, right?
A. Because I was not trained, yes.
Q. Okay. And you also did not do the walk and turn test either, did you?
A. No, because the ground was wet.
Q. Okay. And that's -- that's the same --that's a -- those are two kind of field sobriety tests that I just mentioned, right?
A. Yes.
Q. The horizontal gaze and the walk a straight line and turn back around, right?
A. Yes.
Q. And in the walk a straight line and turn back around you have the suspect put their finger on their nose at some point?
A. No.
Q. No? Is the finger on the nose a different test or you don't do that, that's not a test?
A. That -- that's not a test I'm aware of.
Q. Okay. So in this case you didn't do the walk and turn and come back, right?
A. No. As I stated earlier, the ground was wet, and it wouldn't have been fair to Mr. Brackbill.
Q. But nonetheless, you did not have the results -- I mean I appreciate the wet ground and all that, but you did not have the

4

results of any of those field sobriety tests in making your determination as to what you wanted to do that night, right?
A. No, I did not.
Q. Okay. And you had no evidence of bad driving, right?
A. Outside of pushing a bumper, no.
Q. Right. And -- I mean pushing a bumper is not evidence of bad driving, is it?
A. I mean it could be the result, but I'd have no proof that it was related to that.
Q. It could be, but you didn't – you didn't see him hit anything with his car, right?
A. Correct.
Q. And I know we're unclear now whether you actually saw him operate the vehicle or not, but you didn't -- you didn't see him operate the vehicle erratically in any way, did you?
A. No.
Q. And as far as you know he pulled the car over when he was signaled to pull over, right?
A. Or he stopped, yeah.
Q. Yeah. Well, I mean he's not charged with anything like fleeing and eluding, right?
A. Oh, no, no, no.
Q. Or he's not charged with escape, is he?
A. No. No.
Q. Okay. And no one issued him any tickets for like disorderly conduct, right?
A. No.
Q. Okay. So you personally did not smell any alcohol on his breath either, right?
A. No.
Q. So the only evidence that you had was that his clothing or his person smelled like alcohol and he was angry that he was stopped by the police. That's right?
A. Correct.
Q. Okay. And based on that you believe you had probable cause to arrest him?
A. I did.
Q. Okay. Do you have any other factors that you considered when you were weighing probable cause?
A. Well, him pushing the bumper, and that's the three I used.
Q. Understood. Other than that. Is there anything else I missed or that you didn't say that you want to say that adds into your calculation of what probable cause was in this case?
A. No.
Q. Okay. And you admit that he was under arrest, correct?
A. Correct.

> Q. Okay. Okay. And Mr. Brackbill was not that nice to you guys that night, correct?
> A. Correct.
> Q. And, you know, you've already admitted that you didn't give him these tickets until after you got the BAC result, right?
> A. Correct.
> Q. Did you ever think, you know, that -- well, first of all, he -- he admitted to you guys that he had come from work at the Hershey Hotel, right?
> A. I believe so, yeah.
> Q. Okay. And he was dressed like – like someone who would be a hotel worker, right?
> A. Yes.
> Q. And it was three in the morning, correct?
> A. Yes.
> Q. And the bars close at approximately 1:30, 2 o'clock in the Harrisburg area?
> A. I believe so.
> Q. And the Hershey Hotel is approximately 20 to 25 minutes away driving from where this stop occurred?
> A. Probably, yeah.

(Ruff Dep. at 55-61)

29. Defendant Ruff admitted that dragging a bumper on the ground is not evidence bad driving related to a DUI. (Ruff Dep. at 83).

>                                 Respectfully Submitted,
>
>                                 /s Brian J. Zeiger, Esquire
>                                 BRIAN J. ZEIGER
>                                 Identification No.: 87063
>                                 Levin & Zeiger, LLP
>                                 1500 JFK BLVD, Suite 620
>                                 Philadelphia, PA 19102
>                                 215.546.0340