**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CALVIN BRACKBILL                         :         Civil Action No. 1:17-cv-1046
                                         :
                    v.                   :         Jury Trial Demanded
                                         :
STEPHEN RUFF, et al.                     :
                                         :

     AND NOW, this ____ day of _____, 2020, Defendants' Motion for
Summary Judgment pursuant to Fed. R. Civ. P. 56 is DENIED.

                                           _____

                                           **J.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CALVIN BRACKBILL | : | Civil Action No. 1:17-cv-1046 |
| | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| STEPHEN RUFF, et al. | : | |
| | : | |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR**

**SUMMARY JUDGMENT**

---

<u>November 13, 2020</u>
DATE

BRIAN J. ZEIGER, ESQ.
LEVIN & ZEIGER, LLP
TWO PENN CENTER
1500 JFK BLVD STE 620
PHILADELPHIA, PA 19102
215-825-5183
zeiger@levinzeiger.com
PA Bar Id. No. 87063

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CALVIN BRACKBILL | : | Civil Action No. 1:17-cv-1046 |
| | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| STEPHEN RUFF, et al. | : | |
| | : | |

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................ 1

II.  COUNTER STATEMENT OF THE FACTS ....................................... 2

III.  STANDARD OF REVIEW ................................................................. 6

IV.  ARGUMENT ...................................................................................... 7

   A.  Count I False Arrest Against Defendant Ruff ................................. 7
      i.   *Fourth Amendment Standard* .................................................. 7
      ii.  *Pennsylvania DUI Probable Cause Standard* ...................... 10
      iii. *The Brackbill Case* ............................................................... 14
   B.  Count III Failure to Intervene Against Defendant Hill ................. 17
   C.  Count IV Procedural Due Process against Defendant Ruff............. 18
   D.  Qualified Immunity ...................................................................... 22
      i.   *False Arrest* .......................................................................... 22
      ii.  *Failure to Intervene count against Defendant Ruff*............... 25
      iii. *Procedural Due Process* ....................................................... 27
   E.  State Law Immunity ..................................................................... 28
   F.  Count VIII Pennsylvania Malicious Prosecution against Defendant Ruff........... 29
   G.  Count IX Pennsylvania Abuse of Process against Defendant Ruff .................... 31
   H.  Plaintiff's Conduct ...................................................................... 31

V.  CONCLUSION.................................................................................. 33

Exhibit A    Plaintiff Brackbill's Deposition
Exhibit B    Defendant Ruff's Deposition
Exhibit C    Email from Dennis Sorensen to Deric Moody on July 1, 2015 3:04 a.m.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALVIN BRACKBILL | : | Civil Action No. 1:17-cv-1046 |
| | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| STEPHEN RUFF, et al. | : | |
| | : | |

## TABLE OF AUTHORITIES

<u>Cases</u>

*A.M. ex rel. J.M.K. v. Luzerne City. Juvenile Det. Ctr.*, 372 F.3d 572, 587 (3d Cir. 2004) .................................................................................................................... 30

*Albright v. Oliver,* 510 U.S. 266, 271 ................................................................... 28

*Anderson v. Creighton*, 483 U.S. 635, 640, (1987) ............................................... 27

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ................... 6-7, 26

*Ashcroft v. al-Kidd*, 563 U.S. 731, 739 (2011) ..................................................... 28

*Baker v. Monroe Township*, 50 F.3d 1186, 1193 (3d Cir.1995) ......................... 21

*Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir.1994) ......................... 28

*Bistrian v. Levi*, 696 F.3d 352, 372 (3d Cir. 2012)............................................... 31

*Black v. Montgomery County*, 835 F.3d at 371 (3d Cir. 2016) ........................... 22

*Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69 (3d Cir. 2017) ...... 23

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 (3d Cir. 2007)................. 6

*C. Wright, A. Miller, E. Cooper*, 18 Federal Practice and Procedure § 4477 (1981 & Supp.1990) ........................................................................................................ 26

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)............................................. 6

*City of Lawton, Okla. v. Lusby*, 474 U.S. 805 (1985)........................................... 32

*Commonwealth v. Angel*, 946 A.2d 115 (Pa.Super. 2008)..................12-13, 16, 18

*Commonwealth v. Anthony,* 977 A.2d 1182 (Pa. Super. 2009)..................16, 18

*Commonwealth v. Cauley*, 10 A.3d 321, 327 (Pa.Super. 2010)................16, 18

*Commonwealth v. Chernosky*, 874 A.2d 123, 128 (Pa.Super. 2005) ..........14, 19

*Commonwealth v. Danforth,* 576 A.2d 1013 (Pa. Super. 1990)...............14, 19

*Commonwealth v. Dommel*, 885 A.2d 998, 1002–03 (2005)...............15, 13, 19

*Commonwealth v. Hartle,* 894 A.2d 800, 804–05 (Pa.Super.2006)..........12, 18

*Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308 (1992)............................... 16

*Commonwealth. v. Weaver*, 76 A.3d 562, 568 (Pa.Super. 2013), <u>aff'd,</u> 629 Pa. 313, 105 A.3d 656 (Pa. 2014)............................................................................................ 15

*Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007).......................................................... 9

*Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)................................................... 29

*Delgrosso v. Spang* & Co., 903 F.2d 234, 241 (3d Cir. 1990)........................... 26

*Devenpeck v. Alford*, 125 S.Ct. 588, 594 (2004)................................................... 29

*Dunaway v. New York*, 442 U.S. 200, 212 (1979)................................................. 10

*Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 673 (E.D. Pa. 2017), aff'd, 756 F. App'x 165 (3d Cir. 2018) ....................................................................................21, 32

*Estate of Booker v. Gomez*, 745 F.3d 405, 422–23 (10th Cir. 2014) .........................31, 32

*G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247 (3d Cir. 2009) ........................... 25

*Greenberg v. McGraw*, 161 A.3d 976, 990 (Pa. Super 2017) ........................................ 37

*Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014) .................................................... 22

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982) ......................................................... 27

*Hilliar*, 943 A.2d 984 .................................................................................................... 18

*Jackson v. City of Pittsburg*, 688 F. Supp. 2d 379, 391 (W.D. Pa. 2010) ...................... 7

*Justice v. Lombardo*, 208 A.3d 1057 (Pa. 2019) ........................................................... 35

*Kaupp v. Texas*, 538 U.S. 626, 631 (2003) .................................................................... 10

*Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988) ................................................................................................................... 36

*Lewandowski v. Nat'l Railroad Passenger Corp.* (Amtrak), 882 F.2d 815, 819 (3d Cir. 1989) .......................................................................................................................... 25

*Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir.1984) .......................... 32

*Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 272 (3d Cir. 2012) .............................. 25

*Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) ........................... 36

*Marino v. Indus. Crafting Co.*, 358 F.3d 241, 247 (3d Cir. 2004) ................................... 7

*McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001) ............................................ 28

*Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) .................................................. 31

*Miller v. Pennsylvania R.R. Co.*, 89 A.2d 809, 811-12 (Pa. 1952) ............................... 36

*Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013) .................................. 7

*Murray v. Silberstein*, 882 F.2d 61 (3d Cir.1989) ........................................................ 26

*New Hampshire v. Maine*, 532 U.S. 742, 742–43, (2001) ............................................. 24

*Noviho v. Lancaster Cty. of Pa.*, 683 F. App'x 160, 164 (3d Cir. 2017) ........................ 11

*Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.) ............ 25

*Orsatti v. New Jersey State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995) .......................... 8

*Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978) ........................................................ 8

*Pitts v. Delaware*, 646 F.3d 151, 156 (3d Cir. 2011) ...................................................... 9

*Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) ................... 39

*Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016) ...................................................... 31

*Renk v. City of Pittsburgh*, 537 Pa. 68, 76, 641 A.2d 289, 293 (1994) ......................34, 36

*Rogers v. Powell*, 120 F.3d 446, 452 (3d Cir. 1997) ....................................................... 8

*Russoli v. Salisburg Twp.*, 126 F. Supp. 2d 821, 840 (E.D. Pa. 2000) ............................ 7

*Ryan Operations G.P. v. Santiam–Midwest Lumber* Co., 81 F.3d 355, 358 (3d Cir.1996) ................................................................................................................................... 25

*Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953) ........................................ 26

*Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) ..................................................... 9

*Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998) ........................................ 37

*Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002 ..................................20-22, 30, 33

*Snell v. City Of York, Pennsylvania*, 564 F.3d 659, 671–72 (3d Cir. 2009) .................... 9

*Swint v. Chambers County Comm'n*, 514 U.S. 35, 49–50 (1995) .................................. 28

*Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) ..............................6-7

*United State v. Wrensford*, 866 F.3d 76 (3d Cir. 2017) ................................................. 10

*United States v. Foster*, 891 F.3d 93, 106–07 (3d Cir. 2018) ........................................ 10

*United States v. Laville*, 480 F.3d 187, 192 (3d Cir. 2007) ............................................... 8
*United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) ............................................... 8
*Whitley v. Hanna*, 726 F.3d 631, 639 (5th Cir. 2013) ..................................................... 31
*Wright v. City of Philadelphia*, 409 F.3d 595, 601 (3d Cir. 2005)............................. 28-29

<u>Statutes</u>

42 Pa.C.S. sec. 8541 .................................................................................................. 33
75 Pa.C.S.A. § 6304................................................................................................... 11

<u>Other Authorities</u>

*Pennsylvania Suggested Jury Charges*, 17.60 (Civ.) (former 13.05A) ........................... 29

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CALVIN BRACKBILL | : | Civil Action No. 1:17-cv-1046 |
| | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| STEPHEN RUFF, et al. | : | |
| | : | |

**BRIEF IN OPPOSITION**

Plaintiff comes now, by and through undersigned counsel, and in opposition to Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and responds as follows:

I.      **Introduction**

On June 28, 2015, Plaintiff was returning from work at the Hershey Hotel, driving through downtown Harrisburg, PA, when his bumper cover came loose from his vehicle. Plaintiff stopped his vehicle, exited his vehicle, and attempted to re-attach the cover to the bumper. Defendants came upon the scene; and, instead of helping Plaintiff, they acted like schoolyard bullies, abused their power, called Plaintiff names, and falsely jobbed-up Plaintiff. Later, when they realized they could not charge Plaintiff with any crimes, they issued bogus tickets as a cover up.

Defendants have refused to accept responsibility when called out about their behavior, action and conduct.

As a threshold matter, undersigned counsel is not the original attorney on the case and did not author the Complaint. Undersigned counsel believes some of the claims in the Complaint are without factual support and therefore voluntarily agrees summary judgment should be granted regarding the following:

1

- Count III Failure to Intervene against Defendants Dawson and Meik;
- Count V Supervisory Liability against Defendant Meik; and
- Count VII Pennsylvania Battery against Defendant Ruff

Accordingly, the only claims Plaintiff will address in this brief are:

- Count I False Arrest against Defendant Ruff
- Count III Failure to Intervene against Defendant Hill
- Count IV Procedural Due Process against Defendant Ruff
- Count VIII Pennsylvania Malicious Prosecution against Defendant Ruff
- Count IX Pennsylvania Abuse of Process against Defendant Ruff

Accordingly, Defendants Dawson and Meik should be dismissed from the matter with prejudice.

In sum, the Defendants' arguments on the remaining claims are: they could have arrested Plaintiff for a myriad of other crimes on the night in question, but didn't; and, even if the Court doesn't buy the above argument, they had qualified immunity anyway. Both arguments fail as a matter of law. Defendants arrested Plaintiff knowing they did not have probable cause that he committed an arrestable crime, Plaintiff had not committed any other crimes or traffic offenses, and Defendants issued bogus tickets more then 30 days later as a cover up. This was a clear violation of Plaintiff's constitutional rights.

## II.    Counter Statement of the Facts

On June 25, 2015, Plaintiff was on his way home from work at the Hershey Hotel. (Brackbill Dep. at 18). Plaintiff had not been drinking. (Brackbill Dep. at 41, 44, 53-54). Plaintiff's car had a bumper cover. (Brackbill Dep. at 37). Plaintiff was traveling to his apartment from the Hershey Hotel to downtown Harrisburg. (Brackbill Dep. at 42). At some point while in downtown Harrisburg, the bumper cover came loose (Brackbill Dep.

at 37), Plaintiff stopped his car (Brackbill Dep. at 34-35), and Plaintiff got out of the car the re-affix the bumper cover. (Brackbill Dep. at 34-35).

The Defendants approached Plaintiff and accused him of Driving Under the Influence of Alcohol (hereinafter "DUI"). (Brackbill Dep. at 56). Plaintiff vehemently denied that he was drinking that night. (Brackbill Dep. at 41, 44, 53-54). In fact, Plaintiff did not drink at all that day, as confirmed later by police testing. (Ruff Dep. at 25-26). Only Defendant Hill claims Plaintiff smelled of alcohol. (Ruff Dep. at 6). The Defendants did not conduct any field sobriety tests. (Brackbill Dep. at 61-62). The Plaintiff showed no signs of intoxication. The Defendants did not issue any traffic citations on the scene on the day in question. (Brackbill Dep. 176). The Defendants did not attempt to arrest or charge Plaintiff with any other crimes.  (Brackbill Dep. 176). More specifically, Defendant Ruff did not issue a Disorderly Conduct Summary or arrest for Disorderly Conduct. (Ruff Dep. at 59). When Plaintiff asked the Defendants why he was in handcuffs and why he was being arrested, they called him a "retard." (Brackbill Dep. at 48).

Plaintiff was transported to the police station for blood testing related to a DUI. (Brackbill Dep. at 62). Defendant Ruff admits there is no such law for suspicion of DUI in Pennsylvania—transporting to the police station for a blood draw is an arrest requiring probable cause, and that he **knew** this was the law in Pennsylvania on the day in question. (Ruff Dep. at 9). Defendant Ruff understood on the day in question that he needed probable cause that Plaintiff committed a crime in order to place him in handcuffs and transport him in the back of a police car back to the police station.  (Ruff Dep. at 9).

After Plaintiff was released from custody, Plaintiff attempted to file complaints about the behavior of Defendants, but no member of government would take his complaints. (Brackbill Dep. at 141). Eventually Plaintiff was allowed to file a complaint. (Brackbill Dep. at 144). Further, Plaintiff attempted to obtain the results of his blood test and no one from the government would help him. (Brackbill Dep. at 155-168). Plaintiff was issued two traffic citations more then 30 days after the incident (Brackbill Dep. at 176). Defendant Ruff has no proof in any documentation that there was any contemplation of these traffic tickets before the DUI results came back not intoxicated. (Ruff Dep. at 63-64).

Plaintiff was acquitted on both tickets.

Plaintiff asks this Honorable Court to make the following factual inferences in his favor in regard to the tone of Defendant's Motion for Summary Judgment:

- Due to Plaintiff's concession that Defendants Dawson and Meik be dismissed from the matter, Defendants cannot show that Plaintiff had any more then very limited contact with Defendant Hill and no contact with the Defendant Ruff, after the matter. There are no other Defendants remaining in the case. Plaintiff intends to file a Motion in Limine before trial to ask the Court to preclude any testimony about Plaintiff's conduct after the event in question because the information is not relevant to the matter as it pertains to Defendants Hill and Ruff, and the prejudice greatly outweighs the probativeness of the information to the jury. Nonetheless, Defendants included this information in their Motion for Summary Judgment to taint the Court against the Plaintiff. Further the cases to

4

which the Defendant cites to not apply to the matter at bar. Due to
Plaintiff's concessions of dismissal of Defendants Dawson and Meik,
Plaintiff asks this Court to disregard that section of Defendants' Motion
for Summary Judgment because any potential relevance no longer exists
regarding the remaining Defendants.

- Inexplicably, Defendants do not cite any proof that the "traffic tickets"
  were in the process of being issued on the night in question. The tickets
  were only issued to spite Plaintiff after Defendants learned Plaintiff's
  BAC was 0.00. Defendants should receive no benefit for their Monday
  morning cover-up. Further, Defendants do not cite to any transcript or
  testimony showing Defendants had any intentions of citing Plaintiff for the
  traffic violations on the night in questions, Defendants do not cite to any
  intention of seizing Plaintiff and transporting him to the police station to
  issue the citation. Lastly, Defendants do not cite to any case law that the
  Defendants had the authority to arrest Plaintiff for the traffic tickets.
  Plaintiff should not be required to prove a negative when he is not the
  movant on the motion.

- Plaintiff's case theory is that once the Defendants realized Plaintiff's BAC
  was zero and they made a bad arrest, Defendants conjured traffic
  violations *nunc pro tunc* and issued traffic tickets via the mail more then
  30 days after the arrest to cover up their original malfeasance.

- Defendants provided a voluminous amount of exhibits in their Motion for
  Summary judgement. Many of the exhibits are self-serving and not in a

5

light most favorable to the non-moving party and should be struck or

given very little weight when considering this motion because these

exhibits are not in a light most favorable to the Plaintiff.

### III.    Standard of Review

A court may grant summary judgment only if "the pleadings, the discovery and

disclosure materials on file, and any affidvits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is material

when it "might affect the outcome of the suit under the governing law." *Id*. In deciding

the motion, the Court must "view the record in the light most favorable to the non-

moving party and draw all reasonable inferences in that party's favor." *Thomas v.*

*Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Bowers v. Nat'l Collegiate*

*Athletic Ass'n*, 475 F.3d 524, 535 (3d Cir. 2007)). This standard means that "a district

court may not make credibility determinations or engage in any weighing of the

evidence; instead, the non-moving party's evidence is to be believed, and all justifiable

inferences are to be drawn in [his] favor." *Montone v. City of Jersey City*, 709 F.3d 181,

191 (3d Cir. 2013) (internal quotations and alterations omitted) (quoting *Marino v. Indus.*

*Crafting Co.*, 358 F.3d 241, 247 (3d Cir. 2004)). "A motion for summary judgment is

properly denied if 'a fair-minded jury could return a verdict for the plaintiff on the

evidence presented.'" *Thomas*, 749 F.3d at 222 (quoting *Anderson*, 477 U.S. at 252).

6

**IV.     Argument**

**A.  Count I False Arrest Against Defendant Ruff**

*i.     Fourth Amendment Standard*

In a situation where an officer arrested an individual without a warrant, the determination of whether the arrest was proper hinges on whether the officer had probable cause. Although generally, "the question of probable cause in a section 1983 damage suit is a question of fact for the jury," a district court may find no probable cause existed as a matter of law and enter summary judgment according. *Jackson v. City of Pittsburgh*, 688 F. Supp. 2d 379, 391 (W.D. Pa. 2010).

The Fourth Amendment to the United States Constitution protects individuals against unreasonable seizure by police officers. *Russoli v. Salisburg Twp.*, 126 F. Supp. 2d 821, 840 (E.D. Pa. 2000). An arrest is a seizure within the meaning of the Fourth Amendments. *Id.* A determination of whether an arrest was reasonable requires examining the totality of the circumstances. *United States v. Laville*, 480 F.3d 187, 192 (3d Cir. 2007). Although an invalid arrest is not *per se* unreasonable, the invalidity of the arrest is a factor in determining if a violation of the Fourth Amendment occurred. *Id.* The validity of an arrest is controlled by state law. *See United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

"Clearly, an arrest without probable cause is a constitutional violation actionable under section 1983." *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978). "The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." *Rogers v. Powell*, 120 F.3d 446, 452 (3d Cir. 1997) (citing *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). "Probable cause to arrest requires more than mere

suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995) (citing *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984).

However, "[i]n a § 1983 action the issue of whether there was probable cause to make an arrest is usually a question for the jury...." *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997); *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007); *see also Snell v. City Of York, Pennsylvania*, 564 F.3d 659, 671–72 (3d Cir. 2009)(reasoning that "clarification of the specific factual scenario must precede the probable cause inquiry. We conclude that determining these facts was properly the job of the jury, and that a rational jury could find that probable cause was lacking for Snell's arrest because he did not create a 'hazardous or physically offensive' condition."); *Pitts v. Delaware*, 646 F.3d 151, 156 (3d Cir. 2011) (reversing grant of judgment as a matter of law to defendant, and reasoning that "[t]he jury could have concluded on the evidence that probable cause was lacking" where defendant officer admitted that at the time he detained plaintiff he had not decided whether to arrest him and where defendant's stated reason for detaining plaintiff – safety concerns – was not mentioned in defendant's contemporaneous report).

Often in 1983 actions, Defendants claim they did not make an arrest. Whether a seizure rises to the level of an arrest (so as to require probable cause) depends on the circumstances. *See, e.g., Kaupp v. Texas*, 538 U.S. 626, 631 (2003) (per curiam) (holding that arrest occurred in case where defendant "was taken out in handcuffs, without shoes, dressed only in his underwear in January, placed in a patrol car, driven to the scene of a crime and then to the sheriff's offices, where he was taken into an interrogation room and

8

questioned"); *Dunaway v. New York*, 442 U.S. 200, 212 (1979) (holding that detention was "in important respects indistinguishable from a traditional arrest" where suspect was "taken from a neighbor's home to a police car, transported to a police station, and placed in an interrogation room," was "never informed that he was 'free to go,'" and "would have been physically restrained if he had refused to accompany the officers or had tried to escape their custody"); *United States v. Wrensford*, 866 F.3d 76 (3d Cir. 2017) (holding that involuntary transportation to the police station and detention in a cell constituted an arrest). *But see United States v. Foster*, 891 F.3d 93, 106–07 (3d Cir. 2018) (holding that the scope of a permissible *Terry* stop was not exceeded even though the suspect was put in handcuffs and transported a short distance for identification). However, in this case, Defendant Ruff makes no such claim.

Notably, the Defendants rely heavily on *Noviho v. Lancaster Cty. of Pa.*, 683 F. App'x 160, 164 (3d Cir. 2017), which is not precedential on this Court and factually distinguishable. Included in Noviho's argument was the **police had probable cause** for the summary offenses. Here, Plaintiff does not agree the Defendants had probable cause for the issuance of the tickets. The Defendants do not cite to any case that says they can make a stand alone arrest for either of the cover up tickets they eventual issued. Even if *Noviho* was binding on this Honorable Court, which it's not, *Noviho* reveals that these alleged tickets did not give the Defendants the right to arrest Plaintiff for the tickets. Plaintiff directs Your Honor to *Noviho*, page 165, footnote 22, the Pennsylvania Vehicle Code:

> 75 Pa.C.S.A. § 6304  (PA Vehicle Code).
>
> § 6304. Authority to arrest without warrant

9

>    (a)  Pennsylvania State Police.--A member of the
>         Pennsylvania State Police who is in uniform may arrest
>         without a warrant any person who violates any
>         provision of this title in the presence of the police
>         officer making the arrest.
>
>    (b)  Other police officers.--Any police officer who is in
>         uniform may arrest without a warrant any nonresident
>         who violates any provision of this title in the presence
>         of the police officer making the arrest.
>
>    (c)  Other powers preserved.--The powers of arrest
>         conferred by this section are in addition to any other
>         powers of arrest conferred by law.

75 Pa.C.S.A. § 6304

Under the statute, the Defendants could not have arrested Plaintiff for the bogus tickets. They are not troopers, Plaintiff was a resident, and there were no other charges contemplated by the Defendants.

This Honorable Court should ignore *Noviho*.

ii.   *Pennsylvania DUI Probable Cause Standard*

In Pennsylvania, there is no statute or provision under law which allows for an arrest or detention for Suspicion of Driving Under the Influence. In order to effectuate an arrest for DUI, an officer must have probable cause, just like any other crime in Pennsylvania. Further, the lack of a portable Breath Alcohol Content machine (hereinafter "BAC"), is no excuse to justify a lack of probable cause.

Courts in Pennsylvania arduously written about the factors that can establish probable cause in DUI cases. In *Commonwealth v. Angel*, 946 A.2d 115, 118 (Pa. Super. 2008), when the state trooper spoke to the appellant, the trooper detected classic signs of intoxication: an odor of alcohol together with Appellant's slurred speech and glassy eyes.

Further, the appellant stated that he could not do so because of a medical condition. *Id.* The Superior Court found, under the totality of the circumstances, that the state trooper possessed the requisite probable cause to arrest the appellant for DUI because he had knowledge of sufficient facts to warrant a belief that the appellant had been driving under the influence of alcohol or a controlled substance. *Id.* Further, a suspect's willingness to submit to field sobriety testing and to chemical testing is a factor in determining if probable causes exists. *Commonwealth v. Hartle,* 894 A.2d 800, 804–05 (Pa. Super. 2006).

> [p]robable cause exists where the officer has knowledge of sufficient facts and circumstances to warrant a prudent person to believe that the driver has been driving under the influence of alcohol or a controlled substance. Additionally, [p]robable cause justifying a warrantless arrest is determined by the totality of the circumstances. Furthermore, probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent [persons] act.

*Commonwealth v. Angel,* 946 A.2d 115, 118 (2008) (quoting *Commonwealth v. Hilliar,* 943 A.2d 984, 994 (Pa. Super. 2008); *Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) (citations and internal quotation marks omitted)).

In *Commonwealth v. Dommel*, 885 A.2d 998, 1002–03 (Pa. Super. 2005), the police officer, before entering the defendant's home, had received an identified victim's continuing report that the defendant broadsided the victim's moving vehicle without stopping, drove through four more red lights at moderate speed, and eventually parked his pickup truck partially behind a residence in an apparent attempt to hide the truck from view. When the police officer arrived at the residence, he saw the victim's damaged vehicle,

thus verifying the basis for the report. *Id.* at 1002. "At that moment, possessing highly reliable evidence that [the Defendant] ran a red light and caused an intersectional collision, made a somewhat lethargic attempt to flee the scene, and maintained that middling speed while driving through four more red lights, the police officer had probable cause to stop the Defendant for several motor vehicle code violations, including DUI." *Id.* at 1002-03 (citing *Commonwealth v. Chernosky,* 874 A.2d 123, 128 (Pa. Super. 2005) (finding probable cause to believe driver was DUI from off-duty police officer's five minute observation of driver continually driving onto berm and on two occasions crossing into the oncoming lane of travel, creating a clear risk to oncoming traffic).

> What solidified probable cause to arrest for DUI, however, was [the defendant]'s practically trance-like reaction in the face of a highly demonstrative show of authority in his front yard. Confronted with a prominent display of patrol car strobe lights, overhead flashers, and an officer's repeated calls to stop where he was, the Defendant neither stopped nor ran away; instead, he just continued to walk into his home and left the door standing wide open behind him. This abnormally insensible reaction to what most would consider an intimidating official presence in their yard, coupled with the officer's knowledge of the Defendant's hazardous driving and slow-paced flight, supplied a fair probability that the Defendant was too chemically impaired to appreciate his surroundings or exercise sound judgment. Under a totality of the circumstances, therefore, an officer exercising reasonable caution would have had probable cause to believe that Defendant had been driving under the influence of drugs or alcohol.

*Id.* at 1003 (citing *Commonwealth v. Danforth,* 576 A.2d 1013 (1990) (evidence of single-car accident killing passenger insufficient to establish probable cause of DUI necessary to administer BAC test where other evidence included officer's express testimony that he did not suspect intoxication or notice any signs of intoxication during interview, and driver

herself had phoned police and offered a legitimate explanation for losing control of her car).

In *Commonwealth. v. Weaver*, 76 A.3d 562, 568 (Pa. Super. 2013), *aff'd*, 105 A.3d 656 (Pa. 2014), "a concerned citizen, who identified himself, called police to report that [the defendant]'s car was being driven in a dangerous manner in that it was weaving and crossing into the oncoming lane of traffic." A state trooper began to follow the defendant stopped him after observing erratic driving. *Id.* The defendant appeared "sluggish and was slow to respond to commands." *Id.* The defendant had an injured leg preventing him from performing other sobriety tests, so the Trooper twice administered the HGN (Horizontal Nystagmus Test—*a type of field sobriety test*) test. *Id.* "That test revealed that [the defendant]'s eyes had extensive nystagmus, which is rapid involuntary oscillation of the eyeballs." *Id.*   Being unable to detect any odor of alcohol, the trooper concluded that the defendant's irregular driving and exaggerated nystagmus was a result of driving under the influence of narcotics. *Id.* "Finally, while Defendant was being investigated based upon the existence of a reasonable suspicion that he was driving under the influence, he consented to a search of his vehicle, wherein controlled substances were discovered."  *Id.* The Court held that these facts gave rise to probable cause. *Id*. (citing *Commonwealth v. Anthony,* 977 A.2d 1182 (Pa. Super. 2009) (stating that police can rely upon information supplied by an identified citizen about defendant's driving behavior in determining whether reasonable suspicion exists to stop car based on suspected DUI); *Commonwealth v. Angel,* 946 A.2d 115 (Pa. Super. 2008) (holding, under a totality of circumstances analysis, knowledge of sufficient facts to warrant a belief that the appellant had been driving under the influence of alcohol or a controlled substance is the proper analysis for probable cause in the DUI

case). *Cf. Commonwealth v. Kohl,* 615 A.2d 308 (1992) (no signs of intoxication does not amount to probable cause for a blood draw for intoxication)).

In *Commonwealth v. Cauley*, 10 A.3d 321, 327 (Pa. Super. 2010), the Court held the police officer had probable cause to arrest for DUI. The officer smelled a strong odor of alcohol emanating from the defendant and observed the defendant had bloodshot eyes, both classic signs of intoxication. *Id.* (citing *Commonwealth v. Angel,* 946 A.2d 115, 118 (Pa.Super.2008) (stating that classic signs of intoxication include odor of alcohol, slurred speech, and glassy eyes)). The officer not only had indicia of Appellant's intoxication, but he also observed Appellant operating a motor vehicle immediately prior to their interaction. *Id.* The Officer pointed to articulable and specific facts that gave rise to the probability that Defendant was driving under the influence. *Id.* Even though the officer did not observe the Defendant driving the vehicle, he was allowed to make a reasonable inference that the Defendant had been driving the vehicle. *Id.* Once that inference was permitted, combined with the officer's observations of clear signs of intoxication, the officer properly administered various field sobriety test to confirm or dispel his suspicions. *Id.*

### iii.   *The Brackbill Case*

As this Honorable Court is aware, Plaintiff filed a motion for summary judgement against Defendant Ruff for Count I—False Arrest Count only. In Plaintiff's Motion, he only cited to Defendant Ruff's version of the event because the rule is that the facts are gleaned in a light most favorable to the non-moving party. Distinct here, the facts now go to facts looked at in a light most favorable to the Plaintiff.

In the Defendant's Motion for Summary Judgement on this Count, the Defendant consistently cites to his own deposition and the deposition transcripts from other

Defendants. The rules are clear this Court should review the facts in a light most favorable to the Plaintiff.  These facts reveal Plaintiff said he was not drinking that night, Defendant Hill is the only person who claims he smelled alcohol on Plaintiff, Defendant Ruff says he did not smell alcohol on Plaintiff, and the BAC finding was a 0.0. A reasonable inference from these facts is that Defendant Hill is not being truthful— Defendant Hill did not smell alcohol on Plaintiff that night.

Also, notably, the Defendant cites to caselaw holding, if Defendant has probable cause for any **other crimes**, Defendant's motion for summary judgement should still be granted on those grounds. However, in their analysis section Defendant does not suggest what that **other crime** would be, let alone in a light most favorable to Plaintiff's facts. The Defendant offers as proof only traffic citations, for which Defendants only cite *Noviho v. Lancaster Cty. of Pa.*, 683 F. App'x 160, 164 (3d Cir. 2017), which is not binding and factually distinguishable as cited *supra*.

Therefore, the only crime for which this Court should consider is DUI.

The Pennsylvania Superior Court has written on this subject to exhaustion and infinitum. The Superior Court has concluded the test for probable cause in a DUI arrest is based on a totality of circumstances. *Commonwealth v. Angel*, 946 A.2d 115, 118 (Pa. Super. 2008). Some of those circumstances are bad driving, and accident, flight, moving violations of the motor vehicle code, odor of alcohol, slurred speech, glassy eyes, refusal to comply with testing, trance-like reactions, slow paced, the one-legged test, the HGH test. *See Commonwealth. v. Weaver*, 76 A.3d 562, 568 (Pa. Super. 2013), *aff'd*, 629 Pa. 313, 105 A.3d 656 (Pa. 2014); *Commonwealth v. Cauley*, 10 A.3d 321, 327 (Pa. Super. 2010); *Commonwealth v. Anthony,* 977 A.2d 1182 (Pa. Super. 2009); *Commonwealth v.*

15

*Angel*, 946 A.2d 115, 118 (Pa. Super. 2008); *Commonwealth v. Hartle,* 894 A.2d 800, 804–05 (Pa. Super. 2006); *Hilliar,* 943 A.2d 984; *Commonwealth v. Dommel,* 885 A.2d 998, 1002–03 (Pa. Super. 2005); *Commonwealth v. Chernosky,* 874 A.2d 123, 128 (Pa. Super. 2005); *Commonwealth v. Danforth,* 576 A.2d 1013 (Pa. Super. 1990);

In this case, Plaintiff was on his way home from work at the Hershey Hotel. Plaintiff did not smell of alcohol because he had not been drinking or been around alcohol. Plaintiff was already out of his car when Defendants arrived so none of them even saw Plaintiff operating his vehicle, let alone any bad driving. Plaintiff did not have anything to drink and Plaintiff had not been in any accident. The bumper cover was drooping from Plaintiff's car, not the bumper itself; and, Plaintiff had valid insurance.

Plaintiff asked for a field sobriety test and tried to walk a straight line once he was already in cuffs. Plaintiff did not understand why he was being transported he asked Defendants why he was being arrested and they called him a "retard." Defendants did not offer Plaintiff a portable BAC on the scene. Plaintiff was fully able to comprehend everything that was happening on the street.

Further, the Defendants are stuck on the "bumper", but Plaintiff stated the issue was the bumper cover. In a light most favorable to the Plaintiff, Plaintiff repeatedly stated at his deposition it was the bumper cover, not the bumper itself that was drooping. This fact is also belied by the dismissal in Common Pleas Court. Further, even Defendant Ruff admitted at his deposition he must give a motorist five days to show him proof of insurance before he can charge the motorist with failure to have insurance under Pennsylvania law. Ruff admitted this practice is not a courtesy, but Pennsylvania law.

16

Accordingly, in a light most favorable to Plaintiff, Defendant Hill is not being truthful about smelling alcohol on Plaintiff. And, Defendant Ruff manufactured a reason for the arrest. They knew they had to claim something—smelled of alcohol, angry, erratic behavior—so they were not truthful. Defendant Ruff did not have probable cause to arrest Plaintiff for anything. Lastly, Plaintiff's case theory is that the tickets were issued after the fact as a cover up. Defendant Ruff admits he waited until **after** the results of the blood test to issue the tickets.  Defendants motion should be denied. Viewing the facts in a light most favorable to the Plaintiff, there exists substantial evidence that could lead a reasonable factfinder to conclude that Defendant Hill was not being truthful so Defendant Ruff could justify the arrest.

**B.  Count III Failure to Intervene Against Defendant Hill**

A claim of failure to intervene generally relies on a situation where a member of law enforcement is accused of idly standing buy when another member of law enforcement is beating a citizen. The question on summary judgment for a failure to intervene claim is usually whether a reasonable fact finder could conclude that Defendant knew another member of law enforcement was using excessive force against the Plaintiff, had an opportunity to intervene, to set the record straight, but refused to do so. *Smith v. Mensinger*, 293 F.3d 641, 652 (3d Cir. 2002). Further, if there is sufficient evidence to show the Defendant knew of and acquiesced in the behavior of other officers, summary judgment should not be granted. *Baker v. Monroe Township*, 50 F.3d 1186, 1193 (3d Cir.1995).

In this case, the failure to intervene relates to a false arrest. Here, Plaintiff claims Defendant Hill knew Plaintiff was not intoxicated. Defendant Hill did not observe any

17

bad driving, glassy eyes, slurred speech, or any other form of incoherence. Further, Defendant Hill did not perform any field sobriety tests. Defendant Hill claims he smelled an odor of alcohol on Plaintiff, but Plaintiff, who is the non-moving party, disputes that he smelled of alcohol.

Defendant Hill observed Defendant Ruff fail to conduct any investigation and knew Plaintiff was not intoxicated when Defendant Ruff took Plaintiff into custody. *Smith* is the seminal case in the Third Circuit from 2002, that the issue is: the observation of a constitutional violation, the realistic opportunity to intervene, and the matter need not be premised on use of force. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2018). "An officer who "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence" is liable under § 1983 if he had a "realistic and reasonable opportunity to intervene." *Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 673 (E.D. Pa. 2017), aff'd, 756 F. App'x 165 (3d Cir. 2018), *quoting Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).

Accordingly, under the legal theories laid out in *Smith* and *Baker*, this Court should deny the Defendant Hill's Motion for Summary Judgment on this claim.

Plaintiff will address qualified immunity *infra*.

**C. Count IV Procedural Due Process against Defendant Ruff**

The standard for Summary Judgement for this claim is

> A plaintiff is able to prevail on this type of claim "if 'there is a reasonable likelihood that, absent that fabricated evidence, the [plaintiff] would not have been criminally charged.'" *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69 (3d Cir. 2017) (quoting *Black*, 835 F.3d at 371). In this regard, "[a] plaintiff must demonstrate a 'meaningful

> connection "between the injury and the use of the fabricated evidence.'" Id. (quoting *Black*, 835 F.3d at 371). Additionally, "the evidence [must] be 'so significant that it could have affected the outcome of the criminal case.'" Id. quoting Black, 835 F.3d at 371).
>
> Further, "[t]he standard required to demonstrate that evidence is fabricated, is a 'notable bar.'" Id. at 70 (quoting Black, 835 F.3d at 372) (emphasis added). Particularly, "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." Id. (citing *Black*, 835 F.3d at 372) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014))). Further, Courts require "persuasive evidence supporting a conclusion that the proponents of the evidence are aware that evidence is incorrect or that the evidence is offered in bad faith." Black, at 372 (quoting *Halsey*, 750 at 295).

*Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69 (3d Cir. 2017).

Defendant Ruff arrested Plaintiff for DUI. Plaintiff spent the night in jail as a result of Defendant Hill's manufactured tail about the Plaintiff smelling of alcohol. Charitably, Defendant Hill's story that Plaintiff smelled of alcohol is the linchpin holding together Defendants' myriad of arguments.

However, this claim is also related to the bogus traffic citations.

Plaintiff's argument is that Defendant Ruff did not intend to issue any traffic citations on the night of the originally encounter with Plaintiff, and once Defendant Ruff learned Plaintiff's blood contained no alcohol, Defendant Ruff fabricated the tickets to cover-up the bad arrest.

The record is devoid of any evidence that Defendant Ruff made any notations on any police documents or computers that he intended to issue any traffic tickets until **after** he was in possession of the BAC results. Defendant Ruff knew he had to give Plaintiff five days to present proof of insurance once requested by a police officer, but instead issued the

ticket without conforming with Pennsylvania law. Defendant Ruff knew it was the bumper cover hanging from the car and not the bumper itself when he issued the bogus tickets. Further, when read in a light most favorable to Plaintiff, there is an email where a supervisor says Ruff asked him what to do if the lab results come back not intoxicated and in that event, the supervisor told him what to do. Exhibit 3. Plaintiff's argument is that in a light most favorable to the Plaintiff that email shows that Ruff asked what to do to cover up the bad DUI arrest. Exhibit 3. Plaintiff asks the Court to read in the email in a light most favorable to Plaintiff so that Plaintiff is not expected to have a smoking gun when presenting these arguments as a respondent.  The record is also devoid of any evidence that the offenses for which Plaintiff was ticketed are arrestable offenses that would justify anything other than a brief detention at the scene, lasting no longer than how long it would take to issue the tickets.

What more fabrication is needed.

A defendant in a 1983 action cannot get a benefit at summary judgment in a Procedural Due Process claim because his attempt to falsely arrest a citizen failed and he issued bogus tickets more then 30 days later as a cover up. Ruff's behavior is so brazen he is out in front of it. Defendant Ruff cannot argue both sides of the coin.

The Third Circuit has long recognized judicial estoppel as a legal theory.

Judicial estoppel has been defined by the Supreme Court as:

> Under the judicial estoppel doctrine, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*New Hampshire v. Maine*, 532 U.S. 742, 742–43, (2001).

In essence, judicial estoppel means a party cannot make one argument during a portion of the litigation, then later in litigation, make the opposite argument because the opposite position now suits him. In the instant matter, Defendants are making the opposite argument they made earlier in the litigation—both in law and fact. The Third Circuit has long recognized the doctrine of judicial estoppel. The relevant caselaw has historically precluded litigants from arguing opposite ends of an argument at different stages of litigation.

Judicial estoppel is a "judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [he or she] has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir.1996). *See also Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 272 (3d Cir. 2012); *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247 (3d Cir. 2009), as amended (Dec. 4, 2009). This doctrine precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir.), cert. denied, 488 U.S. 967 (1988); *see Lewandowski v. Nat'l Railroad Passenger Corp.* (Amtrak), 882 F.2d 815, 819 (3d Cir. 1989); *Murray v. Silberstein*, 882 F.2d 61 (3d Cir.1989); *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953); *C. Wright, A. Miller, E. Cooper*, 18 Federal Practice and Procedure § 4477 (1981 & Supp.1990); *see also Delgrosso v. Spang & Co.*, 903 F.2d 234, 241 (3d Cir. 1990).

Here Defendant Ruff argues in his Motion for Summary Judgment for False Arrest that he had probable cause to arrest for any other charge, not just DUI, based on Plaintiff's

conduct, even though he did not make any arrest or issue any traffic citations on the day in question for anything other than DUI. Yet, in this section of their Motion for Summary Judgment, Defendant Ruff argues there is no fabrication when there is no evidence he intended to issue the traffic citations until after he realized he could not charge Plaintiff with DUI.  Certainly, a reasonable jury could find Defendant Ruff issued the traffic citations as a cover up for a bad arrest, after he received the DUI results. The Defendant cannot argue he was only arresting for DUI and that his analysis went to probable cause for DUI and then argue the tickets are not a coverup when the bad DUI was revealed—he has to pick one or the other.

In a motion for summary judgement all factual inferences go to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Therefore, Plaintiff gets the benefit of the inference as to why he was not arrested for any other crimes and tickets were not issued on the date in question.

Defendant Ruff wants to get a benefit by lighting both ends of the candle, but he is judicially estopped by the Third Circuit from using this strategy. Accordingly, this Court should deny Defendant Ruff's Motion for Summary Judgment on this count.

### D. Qualified Immunity

In Defendants' Motion for Summary Judgment, the Defendants organized their argument on qualified immunity in one section instead of addressing it individually for each claim. Plaintiff follows suit and will address qualified immunity in one section for purposes of judicial economy.

i. *False Arrest*

The defense of qualified immunity is simply stated as, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a constitutional right to be clearly established, it "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To meet this test, "there must be sufficient precedent at the time of the defendant's action, factually similar to the plaintiff's allegations, to put the defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). To overcome the assertion of qualified immunity a plaintiff must sufficiently show a violation of a clearly established constitutional right. The analysis is whether a constitutional violation exists, and, whether a reasonable official would understand what he is doing violates the constitutional right of the Plaintiff. *Ashcroft v. al-Kidd*, 563 U.S. 731, 739 (2011)

In a § 1983 claim for false arrest, the issue for qualified immunity turns to the constitutional violation itself, meaning whether the officer had probable cause. *See Wright v. City of Philadelphia*, 409 F.3d 595, 601 (3d Cir. 2005) (holding whether the officers' conduct violated Wright's constitutional rights, as the first part of the qualified immunity analysis) *relying on Albright v. Oliver*, 510 U.S. 266, 271; *Swint v. Chambers County Comm'n,* 514 U.S. 35, 49–50 (1995).

> It is irrelevant to the probable cause analysis what crime a suspect is eventually charged with. *Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir.1994) ("Probable cause

23

> need only exist as to any offense that could be charged under
> the circumstances."), or whether a person is later acquitted
> of the crime for which she or he was
> arrested, *DeFillippo,* 443 U.S. at 36, 99 S.Ct. 2627; *see
> also Devenpeck,* 125 S.Ct. at 594 ("The rule that the offense
> establishing probable cause must be 'closely related' to, and
> based on the same conduct as, the offense identified by the
> arresting officer at the time of arrest is inconsistent with [ ]
> precedent.")."

*Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005)

Therefore, the standard for assessing qualified immunity in a false arrest case

based on *Wright*, is whether Defendant Ruff had probable to make an arrest for DUI.

In this case, Defendant Ruff acknowledged the transportation of a citizen to a

police station for processing is an arrest and therefore requires probable cause. Police

officers in Pennsylvania are aware there exists no statute for Suspicion of DUI in

Pennsylvania, and that DUI is the same as any other matter, requiring probable cause for

an arrest. In this case Defendant Ruff admits when he ordered Plaintiff transported to the

police station for a blood test, the order was an arrest that required probable cause.

Defendant Ruff admits that he **knew** this rule at the time he ordered the transport of

Plaintiff.

Therefore, in this case, because Defendant Ruff admits he **knew** that he needed

probable cause for the arrest, the only analysis is whether he had probable cause when he

arrest Plaintiff for DUI.  Defendant Ruff's assertion that he somehow has qualified

immunity in regard to the false arrest count is misplaced because other than information

supplied to him from Defendant Hill about the odor of alcohol on Plaintiff, there is no

other information that shows Plaintiff was DUI.

24

Ruff knew the information from Defendant Hill was false because **he smelled Plaintiff himself and knew Plaintiff didn't smell of alcohol**. All of the other factors related to this analysis are contained in Plaintiff's probable cause analysis in the False Arrest section of this brief.  *See* Plaintiff response to False Arrest *supra*.

ii.    *Failure to Intervene count against Defendant Ruff*

To overcome the assertion of qualified immunity a plaintiff must sufficiently show a violation of a constitutional or statutory right, and also a violation of a clearly established constitutional right. The constitutional right for failure to intervene is long established in the United States. However, the failure to intervene cases generally relate to excessive force, not false arrest. Failure to intervene is where a prison guard or official fails to intervene when another prison guard or official is beating a pre-trial detainee, or when a prison guard or a pre-trial detainee fails to stop another pre-trial detainee from beating a pre-trial detainee. The constitutional right has been clearly recognized in this Circuit, "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). A failure to intervene case regarding qualified immunity turns on the second prong, whether a reasonable officer would know his conduct violated the constitutional right, that his conduct was prohibited. *Smith* was decided in 2002, and the instant matter happened more than a decade after the decision. *See also A.M. ex rel. J.M.K. v. Luzerne City. Juvenile Det. Ctr.*, 372 F.3d 572, 587 (3d Cir. 2004); *Raynor v. Pugh*, 817 F.3d 123, 128 (4th Cir. 2016); *Estate of Booker v. Gomez*, 745 F.3d 405, 422–23 (10th Cir. 2014); *Whitley v. Hanna*, 726 F.3d 631, 639 (5th Cir. 2013); *Bistrian v. Levi*, 696 F.3d 352, 372 (3d Cir. 2012); *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir.

1996). A corrections officer cannot, "escape liability by turning either a blind eye or deaf ear to the illegal conduct of their colleagues." *Smith v. Mensinger*, 293 F.3d 641, 652 (3d Cir. 2002). In *Estate of Booker v. Gomez*, 745 F.3d 405, 422–23 (10th Cir. 2014), the Tenth Circuit addressed an issue somewhat similar to the instant matter. In that case, a pre-trial detainee was resisting his processing after arrest by the Denver Police. Various officers came to aid another officer and used force to control Booker. During the incident, the officers killed the Plaintiff and the autopsy ruled the death a homicide. The Tenth Circuit held summary judgment on qualified immunity for a failure to intervene claim was not appropriate, "here, Plaintiff alleged and the video confirmed that all Defendants were present and observed the entire use of force over a two-to-three minute period." *Id.* Because "Plaintiffs presented evidence suggesting that [the Defendants] could have prevented or stopped" the assault on Mr. Booker, *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir.1984), *vacated on other grounds sub nom. City of Lawton, Okla. v. Lusby*, 474 U.S. 805 (1985) (a reasonable jury could find any given defendant here liable for failing to intervene.) *See Mick*, 76 F.3d at 1137 (reasoning a "sworn affidavit by an eyewitness to the effect that [the defendant] watched the [excessive force] incident and did nothing to prevent it" precluded summary judgment for defendant based on qualified immunity for failure to intervene claim). "Under either theory, if Mr. Booker was the victim of excessive force— which we address in greater detail below—a reasonable jury could find each deputy subject to § 1983 liability for violating his clearly established rights." *Estate of Booker v. Gomez*, 745 F.3d 405, 422–23 (10th Cir. 2014). *See also Ekwunife v. City of Philadelphia*, 245 F. Supp. 3d 660, 673 (E.D. Pa. 2017), *aff'd,* 756 F. App'x 165 (3d Cir. 2018), (holding "An officer who "fails or refuses

26

to intervene when a constitutional violation such as an unprovoked beating takes place in his presence" is liable under § 1983 if he had a "realistic and reasonable opportunity to intervene" (*quoting Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002))).

This case is really no different. Defendant Hill was an experienced officer at the time of this case and he knew that probable cause was required for Defendant Ruff to arrest Plaintiff. He sat by, idly watching Defendant Ruff falsely arrest Plaintiff. Defendant Hill did not observe any bad driving, failed field sobriety testing, blood shot eyes, slurred speech, or failure to respond to commands. Worse, Hill knew the Plaintiff did not smell of alcohol.  Defendant Hill knew Plaintiff should not have been arrested, but he acquiesced. Just like in *Smith* from 2002, a defendant cannot escape liability for turning a blind eye on the maleficence of a fellow officer. Like in *Booker* and *Mick*, officers are not allowed the shield of qualified immunity when they are an eyewitness to a constitutional violation.

iii.    *Procedural Due Process*

This section is related to false arrest, but goes to fabrication. Plaintiff has addressed that citizens have a constitutional right against false arrest *supra*. Further, Defendants in their motion suggest police officers know they cannot fabricate a charge against a citizen, so Plaintiff need not further address qualified immunity as it pertains to the Procedural Due Process count.  It is clear—viewing the facts in light most favorable to Plaintiff, a reasonable factfinder could infer that the claim of smelling of alcohol on Plaintiff was a purposeful fabrication.  It is not in dispute that (1) Plaintiff was working before encountering Defendants; (2) that Plaintiff denied at all times consuming alcohol on the day in question; (3) Defendant Ruff interacted with Plaintiff for a significant

27

period of time on the night in questions and at no time did he smell even a slight scent of alcohol coming from Plaintiff's breath, person, or car; (4) Plaintiff's BAC was in fact 0.00 on the night in question; and (5) Defendant Hill is the only one to claim having smelled alcohol on Plaintiff, despite numerous officers interacting with Plaintiff.  A reasonable factfinder could conclude, based on the totality of this evidence, that Defendants purposefully fabricated having smelled any alcohol on Plaintiff.  And if this is true, there can be no qualified immunity for such clearly unconstitutional actions.

### E.  State Law Immunity

As a threshold matter, Defendant Ruff claims he has immunity from the state law claims and writes about this issue in a separate section in his memorandum instead of including the argument in each section. Plaintiff will follow the same order for judicial economy. However, in this section some of the arguments are intertwined.

Officer Ruff was sued in his individual capacity. (ECF 16, Plaintiff's Amended Complaint, Paragraph 5).

The Defendants argue under Section 8541 of the Pennsylvania Political Subdivision Tort Claims Act (Hereinafter "the Act"), that the City of Harrisburg is a local agency under the Act and that Defendant Ruff was an employee under the Act. Further, the Defendants quote the Act,

> Except as otherwise provided in this subchapter, no local
> agency shall be liable for any damages on account of any
> injury to a person or property caused by any act of the local
> agency or an employee thereof or any other person.

42 Pa.C.S. sec. 8541.

The Defendants go on to cite *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994), that only if a jury finds the Defendant acted with willful misconduct can Plaintiff pierce the Political Subdivision Tort Claims Act.

All of these arguments go to indemnification, not to liability. Defendant Ruff was sued in his individual capacity. Plaintiff has no position on whether the City of Harrisburg has to indemnify him or whether they want to indemnify him. Plaintiff is happy to collect a judgement from Defendant Ruff as an individual.

This argument is appropriate for an argument about the verdict slip for a special questionnaire to the jury. At this point Plaintiff has not formed an opinion on whether he will object to the Defendants getting this question on the verdict sheet, that is, "Do you find that Defendant Ruff acted with Willful Misconduct when he charged Plaintiff with Traffic Citations?" Nonetheless, summary judgement is a completely inappropriate forum for this argument. *See Justice v. Lombardo*, 208 A.3d 1057 (Pa. 2019) (holding a question of whether a state trooper was acting within the scope of his employment is a jury question).

Even if this Honorable Court disagrees with Plaintiff about the appropriateness of this argument insofar as it pertains to a summary judgment motion, with all facts in a light most favorable to the Plaintiff, a jury could certainly find that once Ruff learned he made a bad arrest for DUI, he issued the traffic tickets as a cover up, which is clearly willful misconduct. Accordingly, the Defendants do not have state immunity.

**F. Count VIII Pennsylvania Malicious Prosecution against Defendant Ruff**

For Plaintiff to establish malicious prosecution, Plaintiff must establish that there was a lack of probable cause to arrest Plaintiff. *See Kelley v. Gen. Teamsters, Chauffeurs*

29

*& Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988) (holding lack of probable

cause to be an element of malicious prosecution); *Manley v. Fitzgerald*, 997 A.2d 1235,

1241 (Pa. Commw. Ct. 2010) (holding that an arrest based upon probable cause is a

lawful arrest).

Probable cause is defined as "a reasonable ground of suspicion supported by

circumstances sufficient to warrant an ordinary prudent man in the same situation in

believing that the party is guilty of the offense." *Kelley*, 544 A.2d at 942 (quoting *Miller*

*v. Pennsylvania R.R. Co.*, 89 A.2d 809, 811-12 (Pa. 1952)). The Supreme Court of

Pennsylvania has recognized, "[a]n arrest based upon probable cause would be justified,

regardless of whether the individual arrested was guilty or not." *Renk v. City of*

*Pittsburgh*, 537 Pa. 68, 76, 641 A.2d 289, 293 (1994) (emphasis added). Also, malicious

prosecution requires a showing of malice (*Kelley*, 544 A.2d at 941). Lastly, malicious

prosecution requires a favorable termination for Plaintiff. *Pennsylvania Suggested Jury*

*Charges*, 17.60 (Civ.) (former 13.05A)

In this matter, Plaintiff was never charged with DUI, so the only basis upon which

he can continue with his malicious prosecution claim is in regard to the traffic citations.

Thus, in a light most favorable to Plaintiff, Defendant Ruff must show in his

Motion for Summary Judgement, that he had probable cause to issue the tickets. As

argued *supra*, once Defendant Ruff learned he made a bad arrest for DUI, he issued the

traffic tickets as a cover up. Certainly, if a jury were to find the tickets were issued as a

cover up, the jury would be saying there was no probable cause for the issuance of the

tickets and the tickets were issued with malice. And, both tickets were dismissed in

criminal court, so Plaintiff has a favorable termination. The Defendants Motion for

Summary Judgement on this count should be denied.

### G.  Count IX Pennsylvania Abuse of Process against Defendant Ruff

Plaintiff agrees with the Defendants the standard for state law Abuse of Process

is:

> "[T]o establish a claim for abuse of process it must be shown
> that the defendant (1) used a legal process against the
> plaintiff, (2) primarily to accomplish a purpose for which the
> process was not designed; and (3) harm has been caused to
> the plaintiff." *Greenberg v. McGraw*, 161 A.3d 976, 990 (Pa.
> Super 2017) (quoting *Shiner v. Moriarty*, 706 A.2d 1228,
> 1236 (Pa. Super. 1998), appeal denied, 729 A.2d 1130 (Pa.
> 1998)). Accordingly, "the [plaintiff] must show some
> definite act or threat not authorized by the process, or aimed
> at an objective not legitimate in the use of the process." Id.
> (quoting *Shiner*, 706 A.2d at 1236). However, "there is no
> liability where the defendant has done nothing more than
> carry out the process to its authorized conclusion, even
> though with bad intentions."

*Id.* (quoting *Shiner*, 706 A.2d at 1236).

In the matter *sub judice*, Plaintiff's case theory is that once Defendant Ruff

learned he made a bad arrest for DUI, he issued the traffic tickets as a cover up. If a jury

were to find the tickets were issued as a cover up, the jury could also find the tickets were

issued for a primary purpose other than justice, and Plaintiff was caused harm because he

had to hire a lawyer and go to court multiple times.

### H.  Plaintiff's Conduct

The Defendants ask this Court to dismiss the matter due to the subsequent

conduct of the Plaintiff. The cases to which the Defendants cite generally go to incidents

involving the litigation; more specifically, acts of one party or the attorneys for that party.

Undersigned counsel implores the Court to read the cases cited. In this case, the conduct

to which the Defendants point this Court have nothing to do with the instant litigation. Further, the conduct alleged occurred some time ago before undersigned counsel was entered as the attorney of record. Generally speaking, the type of acts that govern the type of action requested by the Defendants by a Federal Judge involve counsel or parties not appearing for conferences, not answering discovery, not appearing at their depositions, etc., none of which is alleged by the Defendants in the matter at bar.

The Factors for this Court to consider are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary […]; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

In this case, the conduct alleged is not related to the lawsuit. The Defendants do not point to any acts or conduct that have anything to do with the litigation in this matter. The Defendants do not claim they are prejudiced in anyway—that somehow they cannot defend the case. The Defendants do not claim the conduct of Plaintiff or undersigned counsel were dilatory, or acted with ill will or bad faith manner in regard to the litigation. Since undersigned counsel has entered his appearance the opposite has occurred. As soon as undersigned counsel entered his appearance, the discovery was immediately ramped-up and completed without issue. All parties and counsel appeared at all depositions with court reporters ordered and in compliance with both firms' Covid-19 protocols.  Further, counsel have a very collegial and amicable relationship with almost no discord or disagreement regarding scheduling or procedural issues.

32

As to an alternative sanction, undersigned counsel does not believe any sanction is warranted because none of the issues described in the Defendants' motion has anything to do with the litigation in this matter. Plaintiff's counsel intends to file a Motion in Limine to ask the court to review each of these allegations separately as to their admissibility at the time of trial; however, that motion pertains to admissibility at trial and has nothing to do with the instant motion. Undersigned counsel does not believe this motion is the appropriate forum to discuss the conduct of the Plaintiff outside of the litigation.

Further, as discussed above, Plaintiff is now only proceeding against two of the original Defendants on limited claims, all of which are meritorious. And, Plaintiff is only alleged to have very minimal contact with Defendant Hill and there is no allegation of any contact with Defendant Ruff. Nowhere in Defendants' Motion do they suggest any of Plaintiff's claims are frivolous.

Accordingly, no sanction is warranted.

**V.    Conclusion**

The Defendants are personally involved in a constitutional violation. The Defendants' conduct were constitutional violations. Defendant Hill knows Plaintiff did not smell of alcohol, Defendant Ruff knew he did not have probable cause to arrest Plaintiff, and Defendant Ruff knew he issued the tickets in spite after he got the BAC results.

The acts of the Defendants were the cause of Plaintiff's injury. The Defendant acted with recklessness or callous indifference to the Plaintiff's federally protected rights.

Defendant's motion should be denied.

33

RESPECTFULLY SUBMITTED,

November 13, 2020          /s/ Brian J. Zeiger, Esquire
DATE                        BRIAN J. ZEIGER, ESQ.
**LEVIN & ZEIGER, LLP**
1500 JFK BLVD STE 620
PHILADELPHIA, PA 19102
215-825-5183
PA Bar Id. No. 87063

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CALVIN E. BRACKBILL       : TRIAL BY JURY
       Plaintiff.         :
                       : CIVIL ACTION NO.: 1:17-cv-01046-JPW
v.                     :
                     :
STEPHEN J. RUFF, et al.    :
       Defendants     :

**CERTIFICATE OF WORD COUNT**

I hereby certify that pursuant to Microsoft Word version 16 for MAC, the word count tool indicates the above memorandum of law contains 4,453 words.

Respectfully Submitted,

/s Brian J. Zeiger, Esquire
BRIAN J. ZEIGER
Identification No.: 87063
Levin & Zeiger, LLP
1500 JFK BLVD, Suite 620
Philadelphia, PA 19102
215.546.0340

35

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CALVIN E. BRACKBILL          : TRIAL BY JURY
         Plaintiff.          :
                               : CIVIL ACTION NO.: 1:17-cv-01046-JPW
v.          :
                               :
STEPHEN J. RUFF, et al.          :
         Defendants          :

## CERTIFICATE OF SERVICE

      I hereby certify that opposing counsel has received a copy of the foregoing via

this Court's ecf and via email.

                              Respectfully Submitted,


                              /s Brian J. Zeiger, Esquire
                              BRIAN J. ZEIGER
                              Identification No.: 87063
                              Levin & Zeiger, LLP
                              1500 JFK BLVD, Suite 620
                              Philadelphia, PA 19102
                              215.546.0340

36