UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALVIN E. BRACKBILL, | ) | CIVIL NO. 1:17-CV-1046 |
| Plaintiff | ) | |
| | ) | (WILSON, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| STEPHEN J. RUFF, *et al.*, | ) | |
| Defendants | ) | |

REPORT & RECOMMENDATION

*Motion for Summary Judgment by Defendants Stephen Ruff, Gregory Hill, and Tyron Meik (Doc. 76)*

## I.  INTRODUCTION

Plaintiff alleges that he was arrested without cause for driving under the influence ("DUI"). When the blood test results were negative, he was not formally charged with DUI. However, he alleges that the officers at the scene of his arrest fabricated evidence for two summary grade vehicle offenses. These vehicle citations were filed, he claims, to protect the officers from a false arrest claim and his complaint to the police department about his arrest. The vehicle citations were resolved in his favor. Plaintiff then sued the City of Harrisburg and four police officers alleging nine separate causes of action. Earlier motions have excused the City and one officer. The three remaining officers now seek summary judgment on all claims. Plaintiff's counsel, in his responsive brief, concedes summary judgement is appropriate on three of the claims but opposes summary judgment on the

remaining claims. Competing Briefs and Statements of Material Fact have been filed and the matter is ripe for resolution.

## II.    BACKGROUND

Plaintiff was driving home from a late-night shift when he heard a scraping noise. He stopped, saw that his front bumper cover was sagging, and lifted it up and clipped it back into place. Officers nearby walked over, questioned Plaintiff repeatedly about what he had hit and if he had been drinking, and arrested him for DUI. Plaintiff's blood test results came back negative for drugs and alcohol, and defendants then issued Plaintiff two summary offense traffic citations, which were eventually dismissed. Plaintiff sued, alleging false arrest and other claims. Defendants now seek summary judgment. For the reasons below, I recommend the Motion (Doc. 76) be GRANTED in limited part and DENIED in part.

On June 14, 2017, Plaintiff filed this suit under 42 U.S.C. § 1983, alleging multiple constitutional violations against various police officers and the City of Harrisburg, Pennsylvania. (Doc. 1). Plaintiff proceeded on an Amended Complaint (Doc. 16). On September 28, 2017, Defendants City of Harrisburg, PA, Ian L. Dawson, Gregory A. Hill, Tyron E. Meik, and Stephen J. Ruff filed a Motion to Dismiss (Doc. 18). On May 22, 2018, the Court granted the motion in part and denied it in part. (Doc. 26). On July 3, 2018, Defendants City of Harrisburg, Dawson, Hill,

Meik, and Ruff filed an Answer (Doc. 33) to Plaintiff's Amended Complaint (Doc.

16). The following claims and parties remain:

- Count I   42 U.S.C. § 1983 False Arrest – Defendant Ruff
- Count III   42 U.S.C. § 1983 Failure to Intervene – Defendants Hill and Meik
- Count IV   42 U.S.C. § 1983 Procedural Due Process, fabricated evidence – Defendant Ruff
- Count V   42 U.S.C. § 1983 Fourth and Fourteenth Amendment violations, Supervisory Liability – Defendant Meik
- Count VII   State Law Battery – Defendant Ruff
- Count VIII   State Law Malicious Prosecution – Defendant Ruff
- Count IX   State Law Abuse of Process – Defendant Ruff

(*See* Docs. 16, 26). As I will discuss below, Plaintiff states in his Brief in Opposition

to the present Motion that he does not oppose summary judgment on Count III

(Failure to Intervene) as to Defendant Meik[1]; Count V (Supervisory Liability)

against Defendant Meik; or Count VII (State Law Battery) against Defendant Ruff,

and therefore the dismissal with prejudice of Defendants Dawson and Meik and the

dismissal of Count VII against Defendant Ruff. (Doc. 85, pp. 7-8[2]).

_____

[1] Plaintiff also includes Ian Dawson. I note that while Officer Dawson does not appear to have been terminated as a defendant on the docket in this matter, Judge Wilson dismissed all claims against him (*see* Docs. 25, 26), and Plaintiff did not amend his Complaint to reallege any claims against Officer Dawson. He therefore is no longer a defendant in this matter.

[2] All references to page numbers in this Report and Recommendation are to the page numbers assigned by CM/ECF.

On October 30, 2020, Defendants filed the present Motion for Summary Judgment (Doc. 76), Statement of Material Facts (Doc. 75) with exhibits, and a Brief in Support (Doc. 77). Plaintiff filed a Brief in Opposition (Doc. 85), a Response to Defendants' Statement of Facts (Doc. 84), and a Counter Statement of Facts (Doc. 83). Defendants filed a Reply Brief (Doc. 91), and Plaintiff was granted leave (Doc. 94) to file a Sur Reply (Doc. 95). Plaintiff has also filed a Partial Motion for Summary Judgment (Doc. 71) on his False Arrest claim, which I address in a separate Report and Recommendation.

III.  SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012)). For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *Anderson*, 477 U.S. at 248-49).

The Court must view the evidence presented in the light most favorable to the non-moving party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). A court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Anderson*, 477 U.S. at 252; *see also Big Apple BMW*, 974 F.2d at 1363.

## IV. MATERIAL FACTS FOR SUMMARY JUDGMENT

Unless otherwise noted, the following facts are based on Defendants' Statement of Material Facts (Doc. 75), Plaintiff's Response to the Statement of Material Facts (Doc. 84) and Counterstatement (Doc. 83), and the parties' exhibits, viewed in the light most favorable to Plaintiff as the non-moving party.

### A. THE INCIDENT

On June 28, 2015, around 3:00 a.m., Plaintiff was driving home from work as room service manager at the Hotel Hershey. (Doc. 75-2, pp. 7-8). His shift began in the late afternoon the day prior, and it ended at 2:45 a.m., after he stayed to cover for a late coworker. (*Id.*; Doc. 75-3). His drive home to the Harrisburg University Apartments in downtown Harrisburg took twenty-five (25) to thirty (30) minutes. (Doc. 75-2, p. 7). It had been raining for most of the drive, and Plaintiff put his

window down when the rain stopped, while at a traffic light on Chestnut Street in downtown Harrisburg, at the intersection of Third Street. *Id.* at pp. 7-8.

As he began to drive again when the light turned green, he heard a scraping sound, which he described as being a "medium" volume. *Id.* at p. 8. He stopped once through the intersection and got out immediately. *Id.* at pp. 8-9. He had not heard the sound at any other point that evening. *Id.* at p. 8. Plaintiff could not recall if he had been playing music while driving that night, but he normally plays loud country music while driving. *Id.*

Once he got out, Plaintiff saw that his bumper cover was "sagging" in the middle and touching the road, and it appeared that two clips or tabs on the corners that secure it to the fender had come loose. *Id.* at p. 9. During Plaintiff's deposition, he at times referred to his "bumper," but he clarified that he was referring to the bumper cover, which is positioned on top of and completely covers the bumper. *Id.* at p. 10; (*see also* Doc. 75-5, p. 20). Plaintiff did not know how long his bumper cover had been sagging. (Doc. 75-2, p. 9). He did not know what caused it to sag that night, but he thought it might have been due to a January 2015 accident in which his vehicle slid on ice into a curb, causing the bumper cover to detach when he reversed off the curb. *Id.* at p. 46; (Doc. 75-5, pp. 21-22, 24). Plaintiff had fixed the bumper cover thereafter. The car was a 2004 BMW, which he had bought used in 2013, and the bumper cover was on it when he purchased it. (Doc. 75-2, p. 10).

After stopping, Plaintiff was able to lift the bumper cover and "put it back in the clips," and the bumper cover no longer sagged on the road. *Id.* at p. 10. While Plaintiff was inspecting his vehicle, Officer Hill approached on foot, alone, from the direction in which Plaintiff had been driving. *Id.* Officer Hill asked Plaintiff what Plaintiff had hit. *Id.* Plaintiff responded, "I don't know what I hit. I didn't hit anything." *Id.* Officer Hill responded that Plaintiff must have hit something, and Plaintiff replied again that he "didn't hit anything." *Id.* Plaintiff stated the issue may have been caused by the accident in January 2015.

Officer Hill then asked Plaintiff if Plaintiff had been drinking, and Plaintiff responded that he "had not been drinking. I was coming from work." *Id.* at p. 11. Officer Hill asked for Plaintiff's license, which Plaintiff provided. *Id.* While Officer Hill looked at the license, he asked Plaintiff what he was doing in Harrisburg, as his license said Port Royal, Pennsylvania, which is where Plaintiff had lived with his parents. *Id.* Plaintiff said he was coming home from work to his apartment just up the street. *Id.* Plaintiff does not recall what Officer Hill said after that. *Id.* at p. 11. Plaintiff testified at his deposition that his demeanor was calm throughout his time with Defendant Hill. *Id.* at p. 18.

Defendant Ruff arrived near that time, also on foot, from the direction in which Plaintiff had been driving. *Id.* at p. 11. When he arrived, he asked Plaintiff what he had hit. *Id.* Plaintiff told him he didn't hit anything. *Id.* Officer Ruff then

asked Plaintiff if he had been drinking, and Plaintiff responded that he had not been

drinking and he was on his way home from work. *Id.* Plaintiff did not recall if

Officers Hill and Ruff talked to each other prior to Officer Ruff's questioning. *Id.*

Officer Ruff then said he could smell alcohol on Plaintiff. *Id.* at p. 12. Plaintiff said,

"I haven't been drinking. I'm coming home from work." *Id.* Plaintiff believes

Officer Hill then said he also smelled alcohol on Plaintiff. *Id.* Plaintiff testified at his

deposition that he did not have any alcohol that night, no one had spilled any

alcoholic drink on him at work, he did not have on any cologne and does not

normally wear any, and he did not have any idea why Officer Ruff might have

smelled alcohol. *Id.*

Plaintiff showed the officers his Hotel Hershey badge, which was still on his

left chest area. *Id.* at pp. 13-14. The badge said "Hershey's," with Plaintiff's full

name under it. *Id.* at p. 14. Plaintiff was wearing his work clothes, which were dress

pants, a white dress shirt, and a tie. *Id.* Defendant Hill thought it looked as though

Plaintiff had come from work. (Doc. 75-8, p. 3). The officers did not say anything

in response to Plaintiff showing them his name tag. (Doc. 75-2, p. 14).

Plaintiff testified that "[a]fter multiple exchanges of being asked if I was – or

being told I was drinking and all that stuff, I asked to speak to a sergeant." *Id.* at p.

13. Defendant Hill stated the sergeant was actually coming, and he turned around to

gesture to an approaching Harrisburg Police SUV. *Id.* Plaintiff walked up to the

vehicle when it arrived and told the driver, Defendant Meik, that "these two guys are harassing me for drinking." *Id.* Defendant Meik laughed and responded, "it looks like you've been drinking." *Id.* Plaintiff replied that he had not been drinking. *Id.* Defendant Ruff was standing a couple of feet behind Plaintiff at that time, and he did not know where Defendant Hill was. *Id.* at p. 14. Defendant Meik did not say anything else, and he drove away soon thereafter. *Id.* at p. 13. Plaintiff described there being "very little interaction" between he and Defendant Meik. *Id.* at p. 14.

As Defendant Meik drove away, an officer handcuffed Plaintiff. *Id.* at p. 13. Plaintiff laughed after he was put in the handcuffs, as he "was shocked that I was getting arrested in my work uniform." *Id.* at p. 14. Plaintiff asked what he was being arrested for, and Officer Ruff said, "are you retarded? We've already told you." *Id.* at pp. 12, 65. Neither officer had previously said he was getting arrested for DUI or that they suspected him of DUI, other than asking about him drinking. *Id.* at p. 15. Plaintiff "went back and forth" with the officers, "asking what I was being arrested for, and they said DUI. I said, I wasn't drinking. I was coming from work." *Id.* Plaintiff said he "just couldn't understand" what he was being arrested for. *Id.*

While Plaintiff was handcuffed, Defendant Ruff searched his car. (Doc. 75-2, p. 15). Defendant Ruff opened his trunk, looked through it, and opened both front vehicle doors. *Id.* Defendant Ruff took box of a Claritin medication out and asked Plaintiff if it was prescribed or over-the-counter, to which Plaintiff replied that it was

over-the-counter and for his asthma. *Id.* at pp. 15-16. Plaintiff did not see Defendant Ruff take anything else from the car. *Id.* at p. 16.

During the search, Plaintiff stood on the curb with Defendant Hill. *Id.* Plaintiff asked, "aren't you guys going to perform any field sobriety tests on me?" and raised his right foot as though he was doing a field sobriety test. *Id.* Officer Hill yanked back on Plaintiff's handcuffs and said, "we don't have time for that." *Id.*

After Defendant Ruff finished searching the car, he and Officer Hill took Plaintiff across the street to Officer Dawson and his transport van. (Doc. 75-2, p. 16). Officer Dawson reached his hand out to Plaintiff and said, "hang in there, man. I think You'll be fine. It looks like you're just coming from work." *Id.* Plaintiff responded that, "that's what I've been trying to tell these guys all night." *Id.* Officer Dawson performed a search of Plaintiff's person while Defendant Hill was present, and he found a "Harrisburg University" keycard in Plaintiff's pocket. *Id.* at p. 17. Plaintiff stated, "see, I was just going home. I live right down the street here" and that the other officers would not listen to him. *Id.*

Defendant Hill testified at his deposition that he first spoke to Plaintiff in the roadway, and then asked that the two talk on the sidewalk. (Doc. 75-8, p. 3). Plaintiff followed the command, and Defendant Hill did not observe that Plaintiff had any trouble understanding him. *Id.* at p. 3. Plaintiff was able to walk to the sidewalk, he did not stumble or fall, his speech was not slurred, and he provided responsive

answers to Defendant Hill's questions. *Id.* at p. 4. Defendant Hill testified that Plaintiff was adamant that he had not been in a car accident, and he recalled Plaintiff talking about there being damage to his vehicle at a different date. *Id.* pp. 3, 7.

Defendant Hill testified that he smelled an odor of alcohol "coming from [Plaintiff's] clothing, coming from his person," and that he does not remember it coming from Plaintiff's breath. *Id.* at p. 11. Defendant Ruff did not smell any alcohol. Defendant Hill testified at his deposition that Plaintiff "was denying [drinking] so adamantly that -- you know, and I couldn't do much of a DUI investigation." *Id.* at p. 14. Defendant Hill did not have a breathalyzer in his police vehicle, and he never used one as an officer in Harrisburg. *Id.* at p. 8. He testified that "I remember letting [Defendant Ruff] know that, you know, that was my main suspicion[,] [the alcohol smell] was just coming from the clothing." *Id.* at p. 13. He testified Plaintiff had not done anything else to violate any other laws. *Id.* at p. 5.

Defendant Ruff testified at his deposition that, to the best of his memory, Plaintiff's vehicle was already stopped and Plaintiff out of his vehicle when he arrived, and he never saw Plaintiff operating the vehicle. (Doc. 75-7, pp. 3, 5, 10). He stated, "To the best of my recollection [Plaintiff] was already outside of the vehicle trying to attend to his bumper when I -- by the time I got there." *Id.* at p. 3. Defendant Ruff had also heard the scraping sound that he identified as having come from Plaintiff's vehicle. *Id.* at p. 25. He heard the sound for "[p]robably a few

seconds." *Id.* Defendant Ruff recalls Plaintiff saying he was coming home from work at the Hershey Hotel, and that Plaintiff was dressed as someone who would be a hotel worker. *Id.* at p. 15.

Defendant Ruff testified that he asked the question that led to Plaintiff's arrest, which was, "Do you smell alcohol?," directed to Defendant Hill. (Doc. 75-7, p. 3). Defendant Hill responded by saying "yes . . . or nodded his head or something." *Id.* Defendant Ruff did not smell alcohol himself. *Id.* at pp. 3, 15. Defendants Ruff and Hill describe Plaintiff as being noncooperative and getting agitated and stated that he got close to Defendant Hill at one point and their chests touched. (Doc. 75-8, p. 4). Defendant Hill does not know if the contact was intentional. *Id.* Plaintiff provided conflicting deposition testimony.

Plaintiff concedes becoming frustrated at some point once both Defendants Hill and Ruff were on the scene: "toward the end, after explaining multiple times to him that I had not been drinking, I got a little frustrated . . . that they were not hearing what I was saying." (Doc. 75-1, p. 18). Plaintiff did not get confrontational or aggressive, and he stayed three (3) or four (4) feet away while speaking with the officers. *Id.* But he spoke in a raised voice "that could be construed as yelling," though he did not consider it yelling. *Id.* at p. 22. Defendant Hill testified that he "wouldn't say [Plaintiff] was yelling at me, but his -- his voice was louder than how

we're speaking right now. . . . I mean it wasn't in like a normal conversation like we're having now, but I remember his voice being raised." (Doc. 75-8, p. 14).

Plaintiff was taken to the booking center, where he consented to a blood draw. Plaintiff was held for several hours after that. Plaintiff testified at his deposition that, upon leaving the booking center, he noticed his checkout paperwork stated that he had been "too intoxicated" to sign the form indicating what possessions he had handed over upon booking. (Doc. 75-1, p. 28). When he asked why the form said that, someone working at the booking center said, "shut up, man. Shut up while you're ahead. We're letting you out early." *Id.* at p. 28.

B. PLAINTIFF'S CITATIONS AND CRIMINAL PROCEEDINGS

Plaintiff was not issued any citations the night of the incident. (Doc. 75-7, p. 7). On July 19, 2015, the toxicology report for Plaintiff's blood draw was issued, which indicated a blood alcohol content of 0.00% and that no drugs were present. (Doc. 75-12). On July 26, 2015, following the results, Defendant Ruff issued two traffic citations to Plaintiff: (1) for a violation of 67 Pa. Code 175.78(e)(1) for bumper strength and mounting, and (2) for not having proof of insurance. (*See* Doc. 75-13, *see also* Doc. 75-2, p. 44; Doc. 75-5, p. 11). Defendant Ruff did not immediately issue the traffic citations because it is common practice to wait and include any traffic citations in the criminal complaint for the DUI, so he was waiting to receive the blood test results (Doc. 75-7, p. 6; Doc. 75-1, p. 3). Plaintiff was not

charged with DUI. Plaintiff did not receive the results of his blood test until August 25, 2015, after attempting to obtain them by several means. (Doc. 75-2, p. 43).

Plaintiff hired counsel to contest the tickets. (*See* Doc. 16-5). On November 5, 2015, Plaintiff received a summary hearing for the two traffic citations. (Doc. 75-5). The Court dismissed the citation for lack of insurance but found him guilty not having a properly affixed bumper. *Id.* at pp. 18, 29. Plaintiff sought a summary appeal in the Dauphin County Court of Common Pleas, and the Court held a Summary Appeal Hearing on March 22, 2016. (Doc. 75-15). There appeared to be confusion about the time of the hearing, and the Commonwealth indicated it was unprepared for the hearing that day. *Id.* Judge William T. Tully of the Dauphin County Court of Common Pleas found Plaintiff not guilty, stating,

> At best, looking at what I saw, [it would] probably be a *de minimis* infraction and not necessarily within the parameters of the Vehicle Code prohibition which would deal with those parts affecting the operation of the vehicle as opposed to, perhaps, the protective nature of the bumper.

(Doc. 75-15, p. 2).

### C.    PLAINTIFF'S COMPLAINTS FOLLOWING THE INCIDENT

After Plaintiff was released from custody and got his car back, he attempted unsuccessfully to make a complaint against the Defendants to the Harrisburg Police Department regarding the incident. (Doc. 75-2, pp. 34-36). He was ultimately able

to make a complaint. *Id.* at p. 36. Further, Plaintiff attempted to get the results of his DUI blood draw. *Id.* at p. 39. Plaintiff was not permitted to get the results of his blood draw, and he believed there was a cover-up due to his not being intoxicated. *Id.* Plaintiff received the toxicology results in August 2015, approximately one month after the results had come back. (Doc. 75-2, p. 43).

Defendant Ruff had heard generally that Plaintiff had contacted numerous individuals in the Harrisburg Police Department after his arrest to complain, before the blood test results were returned and before he issued the citations. (Doc. 75-7, p. 16). A lieutenant in the department sent an email a few days after the incident stating he had talked to Defendant Ruff about the incident, and Defendant Ruff had asked about "what happens if the lab comes back with not intoxicated." *Id.* at pp. 22-24.

At Defendant Ruff's deposition, he testified that he had "maybe" made some mistakes the night of the incident, but he does not believe he did anything wrong. (Doc. 75-7, pp. 2, 26). In response to a question about what mistakes he thinks he made, Defendant Ruff stated the following:

> A.     I probably could have tried to slow down the incident and try to get more facts before making a decision.

> Q.     Okay. And so what decisions did you make?

> A.     I made a decision to arrest [Plaintiff] for the suspicion of DUI based off of the -- what Officer Hill told me when he -- he detected an odor of alcohol coming from [Plaintiff].

Q. Okay. And when he told you an odor of alcohol -- alcohol from [Plaintiff], was it from a certain area of [Plaintiff] or just generally, if you recall?

A. I think it was just generally. He didn't -- I don't remember him specifying.

(Doc. 75-7, p. 2). He testified that the incident "was over in a matter of minutes."

(Doc. 75-7, p. 2). He testified that it may have gone differently if he had been able to get certain information from Plaintiff:

> [I]f he was able to explain to me, yeah, whatever instance led to him -- the damage to his car that caused the bumper to fall off that night and that he was just trying to get home and he was coming from work, I would have been like, okay, man, get out of here, just get your car fixed.

(Doc. 75-7, p. 2).

V. DISCUSSION

Defendants argue that they are entitled to summary judgment because (1) there was probable cause to believe Plaintiff engaged in DUI and multiple traffic offenses, defeating Plaintiff's false arrest claim; (2) no evidence supports Plaintiff's fabrication of evidence claim against Defendant Ruff; (3) Plaintiff's claims of failure to intervene against Defendants Hill and Meik fail because there is no underlying constitutional violation or evidence that Defendant Meik had a realistic and reasonable opportunity to intervene; (4) there is no evidence supporting Plaintiff's Section 1983 supervisory liability claim against Defendant Meik; (5) Defendants are each entitled to qualified immunity in their individual capacities; (6) Defendant Ruff

is immune to Plaintiff's state law claims; (7) Plaintiff fails to support his state law battery claim; (8) Plaintiff fails to support his state law malicious prosecution claim; (9) Plaintiff fails to support his state law abuse of process claim; and (10) Plaintiff's claims should be dismissed due to his threatening and disturbing conduct.

## A. FALSE ARREST – DEFENDANT RUFF

A claim of false arrest requires "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)). A false arrest claim fails "if probable cause existed for any one of the crimes charged against the arrestee." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016). The probable cause can be for an offense other than that which the officer stated at the time of the arrest, and it need not be "closely related" to the reason for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153-54 (2004). This is because an officer's *subjective* intent plays no role in the validity of an arrest. *Id.* at 145-55; *see also D.C. v. Wesby*, 138 S. Ct. 577, 585 (2018) ("[A]n arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking."). "[S]ummary judgment for false arrest . . . is proper only if no reasonable juror could find a lack of probable cause for any of the charged crimes." *Harvard*, 973 F.3d at 199.

Defendant Ruff argues that he did not violate Plaintiff's Fourth Amendment rights because probable cause existed for the arrest and, even if probable cause was lacking, he is entitled to qualified immunity.

### 1. Probable Cause

"Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)). The inquiry into probable cause is an objective one, determined from the standpoint of an objectively reasonable police officer. *Wesby*, 138 S. Ct. at 585. "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482–83 (3d Cir. 1995). An arrest is made with probable cause if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge . . . were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citations omitted); *see also Adams*, 407 U.S. at 149 ("In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

Defendant Ruff argues that probable cause existed for the DUI arrest and for the citations for lack of insurance and deficient bumper. I address the probable cause for DUI, the bumper citation, and the lack of insurance citation in turn.

*a. DUI*

Defendant Ruff testified that the three factors he used in considering probable cause for Plaintiff's DUI arrest were that (1) Defendant Hill had said he smelled alcohol on Plaintiff, (2) Plaintiff was angry and aggressive, and (3) Plaintiff had been pushing his bumper with his vehicle. (Doc. 75-7, p. 15, 24). He testified that there were no other factors that went into his determination of probable cause in the case, but that the incident occurring around 3:00 a.m. might have affected whether he thought there was probable cause to arrest for DUI. *Id.* at p. 15. He testified that DUIs occur "maybe more slightly at night." *Id.* at p. 24.

Defendant Hill testified to the following circumstances giving rise to probable cause for arresting Plaintiff:

> The probable cause I had at the time was, you know, at the current hour, it was three o'clock in the morning; we were near the bar district, and all the bars in Harrisburg are right there on Second Street. I just had, like I said, smelled an odor of an -- of an alcoholic beverage coming from his person. Okay? And just demeanor is, you know, as I was trying to talk to him about what happened, you know, as I said, he was upset with me, I wasn't getting very much cooperation.
>
> So I really didn't have as much to work with, but, you know, those were the factors that I had to work with on that date and time.

(Doc. 75-8, p. 6).

Defendant Ruff testified at his deposition that Plaintiff did not have slurred speech or bloodshot eyes, that he did not conduct a horizontal nystagmus test because he was not trained in it, and he did not conduct a field sobriety test because the ground was wet. (Doc. 75-5, pp. 14-15). He also testified that, aside from the ground being wet, he thinks Plaintiff would have been too agitated to effectively perform a field sobriety test, and he is not sure what Plaintiff's answer would have been had the officers asked him to perform such a test. (Doc. 75-7, p. 26).

Plaintiff disputes Defendants' accounts of his demeanor, conceding only that he raised his voice later in the interaction, and he argues that no reasonable officer would have smelled alcohol on him, as there was no alcohol on his breath or clothing to smell. (*See* Doc. 85, p. 21). He therefore argues that a reasonable inference from the facts viewed in the light most favorable to him is "that Defendant Hill is not being truthful—Defendant Hill did not smell alcohol on Plaintiff that night." *Id.* He also notes that he testified at his deposition that he asked, "aren't you guys going to perform any field sobriety tests on me?" (Doc. 75-2, p. 16).

Viewing the record in the light most favorable to Plaintiff, he did not exhibit any of the "classic signs" of being intoxicated. *See Commonwealth v. Angel*, 946 A.2d 115, 116, 118 (Pa. Super. 2008) (stating driver exhibited "classic signs of intoxication," when officer smelled "strong odor of an intoxicating beverage emitting from" driver and driver had glassy, bloodshot eyes and slurred speech).

The only undisputed circumstance to which Defendant Ruff points in arguing that he is entitled to summary judgment is the condition of Plaintiff's vehicle. However, vehicle accidents alone do not necessarily establish probable cause to arrest for DUI. *See Commonwealth v. Danforth*, 576 A.2d 1013, 1018 (Pa. Super. 1990), *aff'd sub nom. Commonwealth v. Kohl*, 615 A.2d 308 (Pa. 1992) (concluding no probable cause for DUI following early morning single-car accident that killed passenger, when officer did not notice "any of the typical signs of alcohol consumption, such as bloodshot eyes, alcohol on the breath, a staggering walk or inability to maintain balance while standing" and when driver called police and offered an explanation for the cause of the accident).

Further, even if it were reasonable for Defendant Ruff to rely on Defendant Hill's statement that he smelled alcohol on Plaintiff, despite not smelling any himself, the odor of alcohol is not necessarily sufficient to establish probable cause for DUI. *See Harvard*, 973 F.3d at 201-02 (concluding reasonable jury could find it unreasonable to for officer to conclude driver incapable of safely operating his vehicle based on odor of alcoholic beverages and driver's statement that he consumed two beers four hours before incident, given driver's height and weight).

The facts surrounding Plaintiff's conduct and demeanor, whether he had fixed his bumper cover, and whether there was a reasonable basis for an officer to smell alcohol on him are all unclear and disputed, and their resolution will depend in large

part upon credibility determinations. The resolution of these factual issues is necessary for a determination on probable cause to arrest for DUI, but resolving factual disputes is the function of the jury. *See Snell v. City of York, Pennsylvania*, 564 F.3d 659, 671-72 (3d Cir. 2009) (reversing and remaining grant of summary judgment on false arrest claim, describing accounts of incident as confusing, stating the basis for arrest is "even less clear," and concluding that "determining these facts was properly the job of the jury"). Based on the facts in the record, a reasonable jury could conclude that Defendants lacked probable cause to arrest Plaintiff for DUI.

### b. Bumper or Bumper Cover

Defendant Ruff argues that, even if he lacked probable cause to arrest Plaintiff for DUI, he had probable cause to cite Plaintiff for violating the Pennsylvania Traffic Code. (Doc. 77, p. 19). The violation to which he cites, 75 Pa. Cons. Stat. § 4107(b)(2), incorporating 67 Pa. Code § 175.78(e)(2), is a summary offense graded below the misdemeanor level and punishable with a minor fine.[3] Defendant Ruff argues that a false arrest claims fails when probable cause existed for any of the charged offenses, including for a summary offense not arrestable under state law. In

---

[3] *See* 18 Pa. Cons. Stat. § 106(c) (defining summary offenses), 75 Pa. Cons. Stat. § 6502 (establishing that violations of the Title 75 Vehicle Code or any regulation promulgated thereunder are summary offenses carrying $25 fines, unless otherwise specified).

support, he cites primarily to *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), and *Noviho v. Lancaster Cty. of Penn.*, 683 F. App'x 160, 164 (3d Cir. 2017).

Plaintiff disputes Defendant Ruff's contention that a later citation for a summary offense not arrestable under state law cures a lack of probable cause for the offense stated at the time of arrest. He argues that *Noviho* is not precedential and that it is distinguishable.

As Defendant Ruff argues, a false arrest claim is defeated if probable cause "exist[ed] as to any offense that could be charged under the circumstances." *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)).

In *Atwater v. City of Lago Vista*, the Supreme Court held, "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." 532 U.S. 318, 354 (2001). *Atwater* involved a misdemeanor violation of a Texas seatbelt statute, arrest for which Texas state law expressly authorized. *Id.* The Supreme Court began its analysis discussing the historical support for statutes authorizing officials to make *warrantless misdemeanor arrests* for violations committed *in their presence* without violating the Fourth Amendment. *Id.* at 336-41, 343-44. The Supreme Court in *Atwater* specifically stated that the justices "need not, and thus do not, speculate whether the Fourth Amendment entails

an 'in the presence' requirement for purposes of misdemeanor arrests." *Id.* at 341 n.11. The Court also distinguished a case on which the plaintiff had relied, stating that case "stands only for the proposition, not at issue here . . . that a nonfelony arrest should be made while the offense is 'in [the officer's] view and . . . still continuing' and not subsequently 'upon vague information communicated to him.'" *Id.* at 341 (quoting *Pow v. Beckner*, 3 Ind. 475, 478 (1852)). *Atwater* therefore addressed only a warrantless arrests of misdemeanor offenses committed in the officer's presence and authorized under state law.

In 2008, in *Virginia v. Moore*, the Supreme Court reiterated the holding of *Atwater* when addressing warrantless arrests of misdemeanor offenses *not* authorized by state law. 553 U.S. 164, 176 (2008). *Moore* involved an arrest for driving on a suspended license, a violation for which officers should have issued a summons under state law. *Id.* at 167. The Supreme Court stated, "In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." *Id.* at 171. The Supreme Court concluded a violation of a state arrest law is not necessarily a Fourth Amendment violation: "We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions

do not alter the Fourth Amendment's protections." *Id.* at 176. As in *Atwater*, *Moore* involved a misdemeanor offense committed in the officer's presence.

Defendant next cites to *Noviho*, which involved a fatal vehicle accident caused when a Freightliner truck reentered a highway from the shoulder, traveling well under the speed limit, and a vehicle crashed into its rear, killing two of the four vehicle occupants. 683 F. App'x at 161-62. After a months-long investigation, officials obtained a warrant for the truck driver and charged him with three (3) third-degree Pennsylvania felonies—two of homicide by vehicle and one of aggravated assault by vehicle, which were premised on underlying traffic violations—and four (4) summary offense traffic violations. *Id.* at 162. The truck driver was acquitted of all felony charges in a jury trial. *Id.* He was found guilty of three (3) of the traffic violations in a summary bench proceeding and appealed without success. *Id.*

During the pendency of his appeals, the truck driver brought a federal civil rights action under 42 U.S.C. § 1983, alleging various Fourth Amendment claims based on the felony acquittals.[4] *Id.* The truck driver argued that officials lacked probable cause to arrest him because the "summary traffic offenses are not

_____

[4] In his complaint, the truck driver alleged that his arrest and prosecution were attempts to deflect culpability from the other vehicle's driver, who he alleged was a well-connected sibling of the then-Lancaster County Commissioner, later a Pennsylvania State Senator, and who was driving under the influence of drugs and far in excess of the posted speed limit at the time of the accident. *Id.*

'arrestable' under Pennsylvania law, with or without a warrant," so "the analysis should be confined to whether the felony counts were unsupported by probable cause." *Id.* at 165.

The Third Circuit responded to this argument, stating,

[T]hat traffic offenses are not themselves "arrestable" under Pennsylvania law does not materially change the analysis. First, it is more accurate to say that the Pennsylvania traffic offenses alone would not have supported the arrest *in this case*. In other circumstances, officers are authorized under state law to arrest for violations occurring in their presence, and arrest warrants in summary cases may issue if a defendant ignores or will not obey a summons. Second, while we have suggested that state law is not irrelevant to a Fourth Amendment reasonableness inquiry, its salience is circumscribed. If an arrest is "otherwise reasonable, the fact that it is not for an 'arrestable' offense [under state law] does not make it unconstitutional." Such is the case here.

*Id.* (footnotes and citations omitted). The Third Circuit then exercised its discretion to reach an issue not decided by the district court, concluding that the plaintiff's false arrest claim would also fail because it was actually a malicious prosecution claim, as the plaintiff was arrested pursuant to a valid warrant. *Id.* at 165-66 & n.26.

While *Noviho* did not go so far as to hold that an arrest for a summary offense not arrestable under state law is always constitutionally permissible, and while it is not binding precedent, it suggests that an arrest for even a summary offense, not arrestable under state law, is constitutionally permissible so long as it is supported by probable cause. I therefore address whether probable cause supported the summary offenses raised by Defendant Ruff.

Defendant Ruff argues in this Motion for Summary Judgment that he had probable cause that Plaintiff had violated 75 Pa. Cons. Stat. § 4107(b)(2), due to a violation of 67 Pa. Code § 175.78(e)(2). (Doc. 77, p. 19). The statutory offense to which makes it unlawful to "operate" a vehicle when "the vehicle . . . in violation of department regulations." 75 Pa. Cons. Stat. § 4107(b)(2). The pertinent regulation then provides that "[n]o portion of a bumper may be broken, torn or protruding to create a hazard." 67 Pa. Code § 175.78(e)(2). Defendant Ruff argues that Plaintiff concedes that "a portion of his bumper and/or bumper cover dragged on the pavement." (Doc. 77, p. 19).

Despite this contention, a view of the record in the light most favorable to Plaintiff supports only that Plaintiff's bumper cover, not bumper, touched the ground and that the two parts are distinct. It is true that the parties, including Plaintiff, refer interchangeably at times to Plaintiff's "bumper" and "bumper cover." However, Plaintiff clearly testified in both his deposition and the state court summary offense hearing that his references to his "bumper" are to his "bumper cover," which covers the bumper itself. (Docs. 75-5, p. 20; 75-2, p. 10). He stated that the bumper of his car, as opposed to the bumper cover, never disconnected from his vehicle. (Doc. 75-2, p. 64). Defendant Ruff testified that he was not sure if the requirements for issuing a ticket for an unsecure bumper differed based on whether a bumper or bumper cover was unsecure. (Doc. 75-7, p. 7). Based on the facts in the record, a reasonable jury

could conclude that only Plaintiff's bumper cover had been hanging down and that the bumper remained securely in place on Plaintiff's vehicle at all times.

In addition, Defendant Ruff testified that he heard the scraping sound he identified as having come from Plaintiff's vehicle for "[p]robably a few seconds." (Doc. 75-7, p. 25). He also testified that, to the best of his memory, Plaintiff's vehicle was already stopped, and Plaintiff was out of his vehicle attending to the issue when Defendant Ruff arrived. (Doc. 75-7, pp. 3, 5, 10). Defendant Ruff further testified that, even if Plaintiff had reaffixed his bumper cover, it "still wasn't secured and any small bump apparently would knock it out of alignment." (Doc. 75-7, p. 20). A reasonable jury could find that Defendant Ruff did not observe Plaintiff's vehicle operating with the bumper cover sagging, that Plaintiff stopped promptly after hearing the scraping noise, that Plaintiff reaffixed the bumper cover, and that speculation by an officer that a personal repair[5] will not be permanent falls short of probable cause to cite for the now-repaired issue.

Lastly, Defendant Hill stated that he did not observe Plaintiff break any laws other than DUI. (Doc. 75-8, p. 5). He also testified at his deposition that, when Plaintiff's blood results came back negative for drugs or alcohol, "I remember

---

[5] The Code provides that "[t]his part [to which Defendants cite] shall not be construed to: . . . Limit the use of independent after market repair." 75 Pa. Cons. Stat. § 4107 (c)(2).

hearing . . . that, you know, we weren't going to proceed with any charges." (Doc. 75-8, p. 8). Based on this and the foregoing evidence, a jury could conclude that the facts known to officers did not provide probable cause to believe Plaintiff operated his vehicle in a condition that violated the regulations to which Defendants cite.

### a. Insurance

Defendant Ruff testified at his deposition that he found an expired insurance card during his search or inventory of Plaintiff's vehicle, which is why he issued Plaintiff a citation for lack of insurance. (Doc. 75-7, p. 6). The parties appear to agree, and the record supports, that Defendant Ruff conducted this search after Plaintiff was arrested and in handcuffs. The parties also appear to agree, and the record supports, that Defendant Ruff did not ask Plaintiff if he had proof of vehicle insurance, either before or after Plaintiff was arrested. Plaintiff testified at his deposition that he had a valid, unexpired insurance card in his glove compartment at the time of the incident. (Doc. 75-1, p. 45).

Probable cause for an arrest should be assessed based on the facts and circumstances known to the officers "*at the moment the arrest was made*." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (emphasis added). Because Defendants had no basis to issue Plaintiff a citation for lack of insurance at the time Plaintiff was arrested, as he had not yet searched Plaintiff's vehicle, the Court should not consider it in evaluating probable cause for Plaintiff's arrest. *See Harvard*, 973 F.3d at 201-

202 n.4 (disregarding, in evaluating probable cause for arrest, findings of Drug Recognition Evaluation, as it was conducted after arrest). Moreover, based on the facts in the record, a reasonable jury could conclude that Defendant Ruff lacked probable cause to arrest Plaintiff for not having insurance.

For the reasons above, a reasonable jury could find, based on a view of the evidence in the light most favorable to Plaintiff, that Defendant Ruff did not have probable cause for the DUI arrest or subsequent citations. There are also numerous factual disputes related to the existence of probable cause that will depend on credibility determinations, which are the proper province for a jury.

## 2. *Qualified Immunity*

Defendant Ruff argues that even if his actions can be construed as violating Plaintiff's constitutional rights, he is entitled to qualified immunity.

Qualified immunity shields government officials, such as police officers, who perform discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quotation omitted). Qualified immunity ensures that, before being subjected to suit, officers are on notice that their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). To be entitled to summary judgment based on qualified immunity, a defendant must show that the undisputed facts do not make

out a violation of a constitutional right or that the right was not clearly established at the time. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Saucier v. Katz,* 533 U.S. 194, 201 (2001). That is, the burden to establish qualified immunity rests with the defendant claiming its protection. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

Qualified immunity analysis has two prongs: whether the plaintiff has alleged or shown facts that make out a violation of a constitutional right and whether the right was clearly established. *Pearson*, 555 U.S. at 231 (2009); *Saucier,* 533 U.S. at 201. To show that a right, even if violated, was *not* clearly established, a defendant must show that "reasonable officials in [defendant's] position at the relevant time could have believed, in light of clearly established law, that [his] conduct comported with established legal standards." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "[T]his inquiry is objective and fact specific." *Santini*, 795 F.3d at 417.

I have already concluded that a reasonable jury could conclude that Defendant Ruff's conduct violated Plaintiff's Fourth Amendment rights. I now turn to whether those rights were clearly established at the time of the conduct.

The Third Circuit has interpreted his inquiry broadly, stating, "there does not have to be 'precise factual correspondence' between the case at issue and a previous case in order for a right to be 'clearly established,' and we would not be 'faithful to

the purposes of immunity by permitting . . . officials one liability-free violation of a constitutional or statutory requirement.'" *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004) (citations omitted). This means "'[o]fficials can still be on notice that their conduct violates established law even in novel factual circumstances' as long as the law gives the officials 'fair warning' that their treatment of the inmate is unconstitutional." *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 449 (3d Cir. 2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Defendant Ruff argues he is entitled to qualified immunity because caselaw at the time of the incident would not have placed him on notice that "arresting an individual who drives a vehicle with a partially detached bumper and/or bumper cover that scrapes the roadway, parks the vehicle in the middle of the roadway, smells of alcohol, yells at officers, and is in a setting where it is typical to find intoxicated people clearly violates the Constitution." (Doc. 77, p. 36). Defendant Ruff also argues that Plaintiff's behavior of getting "up into former Defendant Dawson's face" is relevant to the context of qualified immunity and that "there is no evidence" that Plaintiff could have performed a field sobriety test. *Id.* at pp. 36-37.

Defendant Ruff's presentation of these "facts" overlooks the summary judgment requirement that the Court *must* view the record *in the light most favorable to the non-moving party*, which here is Plaintiff. Plaintiff's testimony, and at times the officers' own testimony, conflicts with the facts Defendant Ruff asks the Court

to consider in analyzing qualified immunity. Defendant Ruff therefore has not established that he is entitled to qualified immunity on the first basis he raises.

Defendant Ruff also argues that, to the extent Plaintiff can argue he lacked probable cause to believe Plaintiff engaged in a traffic violation, he is still entitled to qualified immunity, as Plaintiff has cited to no binding caselaw as of June 2015 to demonstrate that operating his vehicle "on a roadway with the bumper and/or bumper cover partially detached and scraping the roadway" complied with the Pennsylvania Vehicle Code.

The Third Circuit has held that qualified immunity does not require "precise factual correspondence," *Kopec*, 361 F.3d at 778, as "'[o]fficials can still be on notice that their conduct violates established law even in novel factual circumstances' as long as the law gives the officials 'fair warning' that their treatment . . . is unconstitutional." *Porter*, 974 F.3d at 449. Regardless, the qualified immunity analysis must be fact-specific. *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (stating analysis "must be undertaken in light of the specific context of the case" and be based on "the factual situation the officer confronts" (quotations omitted)); *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (stating qualified immunity analysis should not be done at a "high level of generality," and rather involves the "the crucial question whether the official acted reasonably in the particular circumstances that he or she faced" (quotations omitted)).

In considering the issue here, Defendant Ruff's observation of any violation appears relevant, yet this fact is not clear from the record. Defendant Ruff testified at his deposition that he heard a scraping noise for a few seconds (Doc. 75-7, p. 25) and that he did not observe Plaintiff operating the vehicle (Doc. 75-7, p. 3), yet he testified at Plaintiff's hearing on the citation that he did observe Plaintiff operating the vehicle. (Doc. 75-5, pp. 4-5). The condition of Plaintiff's bumper or bumper cover is also disputed, yet it is relevant to considering the factual circumstances presented to the officers and therefore to the issue of qualified immunity. For example, Defendant Ruff testified at the hearing on the citations that Plaintiff's front bumper "was completely off the front of the vehicle being pushed by the vehicle" (Doc. 75-5, p. 13),[6] but he also testified at his deposition that he did not see Plaintiff

---

[6] Defendant Ruff also testified at that hearing as follows:

> Q. But the bumper has many parts. Do you have an independent recollection of whether it was the cover or the bumper?
>
> A. It was the bumper.
>
> Q. It was the entire bumper or part of the bumper?
>
> A. It was the entire front of the vehicle.
>
> Q. Okay. So the entire bumper is on the ground and he's pushing it?
>
> A. Yes.
>
> Q. So it was not affixed to the car at all?

operate the vehicle and that Plaintiff had fixed the bumper or bumper cover when he arrived. Further, Defendant Hill testified that the bumper cover "wasn't all the way off and it's not like the car was pushing on the pavement" and that he did not observe any other violations of law aside from his belief that Plaintiff was DUI. (*See* Docs. 75-6; 75-7, p. 10; 75-8, p. 3).

The unresolved factual disputes in this case, including inconsistencies between and within the officers' accounts of the incident, hinder the particularized fact inquiry necessary to decide whether Defendant Ruff is entitled to summary judgment. I acknowledge "the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). However, it is equally established that "the judge's function [at the summary judgment stage] is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Given the factual uncertainties, which Defendant Ruff presents in his Motion in the light most favorable to him, rather than to Plaintiff as the non-moving party, Defendant Ruff has not established that he is entitled to qualified immunity on Plaintiff's false arrest claim. *See Beers-Capitol*,

---

A. No.

(Doc. 75-5, pp. 14-15).

256 F.3d at 142 n.15. For these reasons, I recommend that the Court deny Defendants' Motion for Summary Judgement on Plaintiff's false arrest claim.

B.    FAILURE TO INTERVENE – DEFENDANT HILL

To state a valid Section 1983 claim for failure to intervene, a plaintiff must show that an officer had a reasonable opportunity to intervene in the face of a constitutional violation and simply refused to do so. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). The Third Circuit has recognized that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983." *Id.* at 650. Liability applies only if "there is a realistic and reasonable opportunity to intervene." *Id.* at 651 (citations omitted).

Defendant Hill[7] argues that there is no underlying constitutional violation, and, even if there is, he is entitled to qualified immunity. (Doc. 77, pp. 28, 36). In his argument on qualified immunity, Defendant Hill does not describe the facts in the light most favorable to Plaintiff, instead appearing to accept only the officers' testimony and disregarding Plaintiff's. He also asks the Court to consider behaviors by Plaintiff after Plaintiff was arrested, including his interactions with Officer Dawson, the transport officer. *See id.* at pp. 36-37. Defendant Hill has not established

---

[7] I discuss Plaintiff's failure to intervene claim against Defendant Meik in a later section.

that he is entitled to summary judgment on Plaintiff's failure to intervene claim,[8]

when considering the record in the light most favorable to Plaintiff.

### C. PROCEDURAL DUE PROCESS, FABRICATION OF EVIDENCE – DEFENDANT RUFF

The Third Circuit has recognized a stand-alone procedural due process claim

for fabrication of evidence. *See Black v. Montgomery County*, 835 F.3d 358 (3d Cir.

2016), *as amended* (Sept. 16, 2016). An acquitted criminal defendant may have a

fabrication of evidence claim under the Fourteenth Amendment if (1) a state actor

fabricated evidence against the defendant, and (2) "there is a reasonable likelihood

that, absent that fabricated evidence, the defendant would not have been criminally

charged." *Black*, 835 F.3d at 371. To meet the "reasonable likelihood" standard, the

plaintiff must establish a "meaningful connection" between the due process injury

and the use of fabricated evidence. *Id.* (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 294

n.19 (3d Cir. 2014)). "[A] civil plaintiff's fabricated evidence claim should not

survive summary judgment unless he can demonstrate that the fabricated evidence

'was so significant *that it could have affected the outcome of the criminal case.*'" *Id.*

(quoting *Halsey*, 750 F.3d at 294) (emphasis added).

---

[8] While the record supports that Defendant Hill had an opportunity to intervene in the arrest of Plaintiff, it does not support that Defendant Hill had a reasonable opportunity to intervene in the issuance of either citation.

Further, "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Halsey*, 750 F.3d at 295; *see also Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 70 (3d Cir. 2017) ("If we were to hold that the 'he said, she said' dispute here rises to the level of fabricated evidence, we would undermine the "unusual case" standard dictated by our precedent, which directs concern to cases in which there is actual evidence of fabrication."). Therefore, at the summary judgment stage, "persuasive evidence" must support "a conclusion that the proponents of the evidence were aware that [it] was incorrect, and thus, in effect, offered the evidence in bad faith." *Id.*

Defendant Ruff argues that he is entitled to summary judgment because Plaintiff "developed no evidence that could be used to show that Defendant Ruff used 'fabricated' evidence as part of the criminal proceedings," as Defendant Ruff's testimony regarding the bumper is corroborated by his police report and Defendant Hill's police report, and Plaintiff himself testified that his bumper cover scraped the ground and that he did not know how long it had been doing so. (Doc. 77, p. 25).

Plaintiff contends that Defendant Ruff falsely stated in his traffic citations that Plaintiff lacked insurance for his vehicle and that he operated it with a bumper that violated vehicle regulations. (Doc. 75-13). Plaintiff alleges that Defendant Ruff testified falsely under oath at Plaintiff's hearing on the citations about the condition of Plaintiff's vehicle and his observation of it. (Doc. 75-5, p. 13). While not in his

Complaint, and while he asserts his fabrication of evidence claim against only Defendant Ruff, Plaintiff also argues that "Defendants purposefully fabricated having smelled any alcohol on Plaintiff." (Doc. 85, p. 34).

Defendant Ruff testified at Plaintiff's hearing on the citations, after which Plaintiff was found guilty of the bumper charge, that Plaintiff's bumper "was completely off the front of the vehicle being pushed by the vehicle." (*See* Doc. 75-5, p. 13). Yet, as discussed previously, Defendant Ruff testified at his deposition that he *did not* see Plaintiff operate the vehicle and that Plaintiff had *fixed* the bumper or bumper cover when he arrived. Further, Defendant Hill, who observed Plaintiff operating the vehicle and was the first on the scene, testified at his deposition that the bumper cover "wasn't all the way off and it's not like the car was pushing on the pavement," and that he did not observe any violations of law aside from his belief that Plaintiff was DUI. (*See* Docs. 75-6; 75-7, p. 10; 75-8, p. 3). Based on this evidence, viewed in the light most favorable to Plaintiff, a jury could find that Defendant Ruff made knowingly false statements during his hearing testimony at the summary offense hearing. For these reasons, I recommend that the Court deny Defendants' motion for summary judgment as to Plaintiff's fabrication of evidence claim against Defendant Ruff.

D.    STATE LAW IMMUNITY

Defendants argue that the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. § 8541, *et seq.* ("PSTCA") provides them with immunity from all of Plaintiff's state law tort claims.

The PSTCA provides that a local government employee[9] "is liable for civil damages on account of any injury to a person or property . . . only to the same extent as his employing local agency. 42 Pa. Cons. Stat. § 8545. Local agencies are given broad immunity in 42 Pa. Cons. Stat. § 8541, subject to certain qualifications. Immunity does not apply to claims based on nine (9) enumerated categories, none of which is at issue here. *See* 42 Pa. Cons. Stat. § 8542(b). Immunity also does not apply to certain conduct involving greater culpability:

> [If] it is judicially determined that the act of the employee caused the injury and *that such act constituted a crime, actual fraud, actual malice or willful misconduct*, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa. Cons. Stat. Ann. § 8550 (emphasis added).

_____

[9] This applies to claims made against employees in their individual capacities. *See Bright v. Westmoreland Cty.*, 443 F.3d 276, 287 (3d Cir. 2006) (applying immunity under PSTCA to officials sued in their individual capacities); *Doe by Brown v. Harrisburg Sch. Dist.*, No. 1:19-CV-1027, 2020 WL 4584372, at *6 (M.D. Pa. Aug. 10, 2020) ("An individual employee's immunity from negligence claims is coextensive with the agency's immunity and is subject to the same exceptions." (citing 42 Pa. Cons. Stat. § 8545)).

The "willful misconduct" portion of the exception has been defined to require that a plaintiff "establish that the actor *desired to bring about the result that followed, or at least it was substantially certain to follow*, *i.e.*, specific intent." *Bright*, 443 F.3d at 287 (quoting *Robbins v. Cumberland Cty. Child. & Youth Servs.*, 802 A.2d 1239, 1252 (Pa. Commw. Ct. 2002)) (emphasis added). Accordingly, "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" *Renk v. City of Pittsburgh*, 537 Pa. 68, 75, 641 A.2d 289, 293 (1994). In Pennsylvania, "willful misconduct is a demanding level of fault." *See Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006).

Plaintiff's state law tort claims of malicious prosecution and abuse of process are based on his allegations that, to cover up the "bad" DUI arrest, Defendant Ruff initiated the two citations knowing he lacked probable cause for them (Doc. 16, ¶¶ 109, 116), falsely claimed that Plaintiff lacked insurance (Doc. 16, ¶ 85), and falsely testified in the hearing on the citations that Plaintiff's entire front bumper had fallen off and was being pushed by his vehicle (Doc. 16, ¶ 86). (*See also* Doc. 85, p. 36).

Defendant Ruff argues that Plaintiff has not provided evidence to demonstrate that he engaged in the willful misconduct necessary to overcome the immunity granted by the PSTCA. (Doc. 77, pp. 43-44). He argues that the record reflects that he acted because he thought he had probable cause and "there is no evidence of specific intent." *Id.*

Plaintiff counters that viewing the record in the light most favorable to him, "a jury could certainly find that once Ruff learned he made a bad arrest for DUI, he issued the traffic tickets as a cover up, which is clearly willful misconduct." (Doc. 85, p. 35). He adds that "whether Plaintiff can prove willful misconduct is a fact driven analysis for a jury, not for Summary Judgement because Plaintiff's case theory is the Defendants are being untruthful. . . . Certainly, a jury could find willful misconduct in all claims related to the issuance of the bogus Summary Citations as a cover-up for a bad arrest." (Doc. 95, pp. 2-3).

Regarding claims related to the citation for lack of insurance, Defendant Ruff testified at his deposition that he found an expired insurance card during his search or inventory of Plaintiff's vehicle, and that is why he issued the citation for lack of insurance. (Doc. 75-7, p. 6). The police report Defendant Ruff completed the day of the incident stated, "Insurance: Y Expired Nationwide." (Doc. 75-6, p. 5). At the hearing on the citation, Defendant Ruff testified that the insurance card he could find "said it expired in 5 of 15" (Doc. 75-5, p. 9), which would have been the month prior to the incident. Plaintiff testified at his deposition that he had an Allstate insurance card stating an effective date of March 17, 2015 and an expiration date of September 17, 2015 in his glove compartment at the time of the incident. (Doc. 75-2, p. 45).

Even if probable cause did not exist to believe Plaintiff lacked insurance, Defendant Ruff's issuance of that citation does not appear to have involved willful

misconduct. Defendant Ruff noted Plaintiff's purported lack of insurance on the police report he prepared the day of incident, well before he received the blood test results. (*See* Doc. 75-6, p. 5). Plaintiff does not allege or identify any false testimony by Defendant Ruff in the hearing on the citation for lack of insurance. (*See* Docs. 16, 85). A jury could credit Plaintiff's testimony that he had a valid insurance card in his glove compartment when Defendant Ruff looked through it. That finding would support that Defendant Ruff failed to thoroughly investigate the facts surrounding the status of Plaintiff's insurance—such as by asking Plaintiff if he had insurance or looking more carefully for another insurance card. However, while such conduct may have been negligent or even reckless, it does not appear to be willful misconduct. *See Bright*, 443 F.3d at 287 ("[E]ven where a public employee acts with a degree of culpability equivalent to 'recklessness,' Pennsylvania law nevertheless affords him immunity."). Accordingly, Defendant Ruff should be entitled to immunity on Plaintiff's state law claims to the extent they are based on the insurance citation.

The issue is less clear regarding Plaintiff's state law claims based on the bumper citation and Defendant Ruff's related testimony. Plaintiff's claim involves allegations that Defendant Ruff falsely testified. Viewing the record in the light most favorable to Plaintiff, a jury could conclude that the inconsistencies in the parties' testimony regarding when Defendant Ruff observed Plaintiff's vehicle and the

condition in which he observed it, described more thoroughly earlier, support that Defendant Ruff falsely testified that his bumper "was completely off the front of the vehicle being pushed by the vehicle." (*See* Doc. 75-5, p. 13). Defendant therefore has not established that he is entitled to immunity on these claims. *Cf. Occhipinti v. Bauer*, No. 3:13-CV-1875, 2017 WL 3495182, at *13 (M.D. Pa. Aug. 14, 2017) ("[T]here is a genuine dispute of fact as to whether [defendant] included information in her affidavit of probable cause that she knew to be false . . . As the affidavit led to both Plaintiff's arrest and prosecution, the Court cannot, on the record before it, hold that [defendant] is entitled to official immunity [under the PSTCA]."). I therefore address the merits Plaintiff's state law claims.

E. STATE LAW MALICIOUS PROSECUTION – DEFENDANT RUFF

The tort of malicious prosecution is "not looked upon with too great favor by the Courts of Pennsylvania." *Baird v. Aluminum Seal Co.*, 250 F.2d 595, 600 (3d Cir. 1957). A plaintiff making a claim of malicious prosecution must establish that "[t]he defendant . . . instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff." *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249*, 544 A.2d 940, 941 (Pa. 1988); *see also Simpson v. Montgomery Ward & Co.*, 46 A.2d 674, 678 (Pa. 1946). In assessing this, the Court must consider if the defendant "honestly believe[d] that the accused committed the crime for which he was

prosecuted" and if "that belief [was] based on a reasonable ground of suspicion of guilt." *Simpson*, 46 A.2d at 678. (quotations omitted). An honest error is one "not motivated by personal malice, bias, or revenge." *Thomas v. E. J. Korvette, Inc.*, 476 F.2d 471, 474 (3d Cir. 1973) (quoting *Neczypor v. Jacobs*, 403 Pa. 303, 308, 169 A.2d 528, 530 (1961)).

"Malice may be inferred from the absence of probable cause," *Kelley*, 544 A.2d at 941, "but it has rarely been sufficient unaided by some showing of private motive." *Miller v. Pennsylvania R. Co.*, 89 A.2d 809, 813 (Pa. 1952). *See also Simpson*, 46 A.2d at 681 ("While malice may be inferred, sometimes from want of probable cause, where there is nothing to rebut the inference, still it is the inference of a fact[.]"). It is proper for a jury to decide the question of the existence of malice. *See Hugee v. Pa. R. Co.*, 101 A.2d 740, 743 (Pa. 1954); *Simpson*, 46 A.2d at 678.

In addition, "when the probable cause determination depends upon disputed issues of fact, the court should submit the factual disputes to the jury, and then make the probable cause determination based upon the jury's findings."[10] *Bristow v. Clevenger*, 80 F. Supp. 2d 421, 434 (M.D. Pa. 2000) (citing *Simpson*, 46 A.2d at 678-79).

---

[10] In Pennsylvania, "probable cause is a question of law for the court to decide. . . . Nonetheless, where probable cause depends on disputed facts, the court may wait to make its probable cause determination after the jury has made its findings." *See Clifton v. Borough of Eddystone*, 824 F. Supp. 2d 617, 634 n.7 (E.D. Pa. 2011).

Defendant Ruff argues that Plaintiff cannot establish that he lacked probable cause for the charged offenses and that "there is no evidence that Defendant Ruff arrested Plaintiff with malice." (Doc. 77, p. 45).

I have already concluded that a reasonable jury could resolve the factual disputes in the record in a manner that would support a lack of probable cause to arrest Plaintiff, thus satisfying element one. *See Kelley*, 544 A.2d at 941. As to the second element, malice, the inconsistencies in the record regarding Defendant Ruff's observation of Plaintiff's vehicle, described more thoroughly earlier in this order, could support a finding of malice, and resolution of that fact issue is properly left to a jury. *See Simpson*, 46 A.2d at 678; *Bristow*, 80 F. Supp. 2d at 434. For the third element, favorable resolution, Plaintiff was found not guilty of the bumper citation. I therefore recommend that the Court deny Defendant Ruff's motion for summary judgment as to Plaintiff's state law malicious prosecution claim.

## F. STATE LAW ABUSE OF PROCESS – DEFENDANT RUFF

"The torts of malicious prosecution and abuse of process are separate and distinct but often confused." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. 2002). The two may overlap in limited circumstances: "if a criminal prosecution 'is wrongfully initiated and thereafter perverted, both torts lie.'" *Fought v. City of Wilkes-Barre, Pennsylvania*, 466 F. Supp. 3d 477, 505 (M.D. Pa. 2020) (quoting

*Occhipinti v. Bauer*, No. 3:13-CV-1875, 2017 WL 3495182, at *11–12 (M.D. Pa.

Aug. 14, 2017); *Jennings v. Shuman*, 567 F.2d 1213, 1218 (3d Cir. 1977)).[11]

> An abuse of process claim in Pennsylvania requires three elements:
>
> the defendant (1) used a legal process against the plaintiff, (2) primarily
> to accomplish a purpose for which the process was not designed; and
> (3) harm has been caused to the plaintiff.

*Greenberg v. McGraw*, 161 A.3d 976, 990 (Pa. Super. 2017) (quoting *Shiner v.*

*Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998), *appeal denied*, 729 A.2d 1130

(Pa. 1998)). In proving this,

> the [plaintiff] *must show some definite act* or threat *not authorized by*
> *the process*, or aimed at an objective not legitimate in the use of the
> process . . .; and there is no liability where the defendant has done
> nothing more than carry out the process to its authorized conclusion,
> *even though with bad intentions*.

*Id.* (quoting *Shiner*, 706 A.2d at 1236) (emphases added).

---

[11] The Third Circuit in *Jennings* illustrated the two torts in Pennsylvania and their potential overlap: "For example, if the defendant justifies issuance of process by untruthfully saying that the plaintiff solicited burglary and uses the process only to have him jailed, this is malicious use only. It is not malicious abuse because jailing is the purpose for which criminal process was intended. If the defendant has process issued based on the truthful statement that the plaintiff solicited burglary and then uses the threat of prosecution for purposes of extortion, this is malicious abuse only. Finally, if, as is alleged in the present case, the defendant has process served based on false statements and uses threat of prosecution for purposes of extortion, both torts will lie." 567 F.2d at 1219.

Defendant Ruff argues that Plaintiff's state law abuse of process claim fails because Plaintiff cannot prove that Defendant Ruff used the criminal process for an illegitimate purpose and, *even if* he can prove a bad motive by Defendant Ruff, that alone is insufficient for an abuse of process claim. (Doc. 77, pp. 46-47). Defendant Ruff appears to challenge only the second element, use of the process for a purpose for which it was not designed.

Plaintiff alleges that Defendant Ruff falsely testified during the hearing on Plaintiff's bumper-related citation, knowing that he lacked probable cause to charge Plaintiff with the violation. Such conduct would constitute a "definite act" that is "not authorized by the process." *Greenberg*, 161 A.3d at 990 (quoting *Shiner*, 706 A.2d at 1236). Plaintiff further alleges that this was done not to bring Plaintiff to justice for any violation, but rather to "cover up" that Defendant Ruff had arrested Plaintiff without probable cause. As stated above, based on the record before the Court, a jury could find that Defendant Ruff falsely testified. It could then reasonably infer that he used the summary offense process primarily to avoid repercussions from his arrest of Plaintiff and Plaintiff's subsequent complaints. *Cf. Logan v. Salem Baptist Church of Jenkintown*, No. 10-CV-0144, 2013 WL 4501209, at *13 (E.D. Pa. Aug. 23, 2013) (denying summary judgment on abuse of process claim when jury could conclude that defendant used criminal proceedings "as leverage for settlement of a judgment").

## G. FAILURE TO INTERVENE AS TO DEFENDANT MEIK, SUPERVISORY LIABILITY AS TO DEFENDANT MEIK, AND STATE LAW BATTERY AS TO DEFENDANT RUFF

Plaintiff states in his Brief in Opposition to the present Motion that he does not oppose summary judgment on Count III (Failure to Intervene) as to Defendant Meik; Count V (Supervisory Liability) as to Defendant Meik; or Count VII (State Law Battery) as to Defendant Ruff, and therefore to the dismissal with prejudice of Defendants Dawson and Meik. (Doc. 86, pp. 7-8). After reviewing the record and Defendant's Statement of Material Facts, uncontested as to these three claims, I conclude that Defendants are entitled to summary judgment. I therefore recommend that Plaintiff's claims in Count III (Failure to Intervene), Count V (Supervisory Liability), and Count VII (State Law Battery) against Defendant Meik be dismissed.

## H. DEFENDANTS' ARGUMENT THAT PLAINTIFF'S CONDUCT OUTSIDE THIS LITIGATION WARRANTS DISMISSAL

Lastly, Defendants argue that Plaintiff has engaged in "threatening, disturbing, distasteful, and potentially criminal conduct" against Defendants "throughout this litigation." (Doc. 77, p. 47). Defendants ask the Court to exercise its inherent power to supervise parties before it and to sanction Plaintiff under the factors in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984), by dismissing this action.

The cases to which Defendants cite in support of this request involve conduct by parties "in the course of litigation," *see Chambers v. NASCO, Inc.*, 501 U.S. 32,

50 (1991), and "those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Poulis.*, 747 F.2d at 866 (quoting *Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982)); *see also Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992) (discussing "litigants who flagrantly violate or ignore court orders").

Defendant has indeed raised some troubling conduct by Plaintiff in which no persons should engage, whether while conducting pending litigation or not.[12] However, this conduct was not done in the course of litigation, and it does not appear to have been done to influence the litigation. The conduct Defendants raise also ceased in late 2018, and there is no indication it has continued. Moreover, Defendants do not identify any interactions between Plaintiff and Defendant Ruff after the incident and through this litigation, and Defendant Hill indicated having only one "very minimal" interaction with Plaintiff sometime after the incident, which does not appear to have been inappropriate.

Defendants are not entitled to dismissal of Plaintiff's action based on his conduct outside of this litigation in 2017 and 2018. Defendants have cited only to authority for dismissal based on conduct in the course of litigation that affects the

---

[12] This includes Plaintiff researching, online, various officers involved in his incident and allegations that he then initiated physically close interactions with those officers while they were on duty, mentioning personal details of the officers.

litigation. The Court should deny Defendants' request to dismiss this matter based on Plaintiff's outside conduct.

## VI.    RECOMMENDATION

For the reasons described herein, I RECOMMEND:

1. The Motion for Summary Judgment (Doc. 76) by Defendants Stephen Ruff, Gregory Hill, and Tyron Meik be GRANTED IN PART and DENIED IN PART as follows:

    a. Defendants' Motion should be DENIED as to Plaintiff's claims of False Arrest against Defendant Ruff (Count I); Failure to Intervene against Defendant Hill (Count III); Procedural Due Process, fabricated evidence against Defendant Ruff (Count IV); State Law Malicious Prosecution against Defendant Ruff (Count VIII); and State Law Abuse of Process against Defendant Ruff (Count IX).

    b. Plaintiff's claims against Defendant Meik for Failure to Intervene (Count III) and Supervisory Liability (Count V) should be DISMISSED with prejudice.

    c. Defendant Ruff's Motion for Summary Judgment (Doc. 76) on the State Law Battery (Count VII) claim be GRANTED.

    d. Pursuant to the Court's prior Order (Doc. 26), all claims against Ian L. Dawson should be DISMISSED with prejudice, and he should be terminated as a defendant. (*See* fn.1).

Date: August 31, 2021                    BY THE COURT

                                         *s/William I. Arbuckle*
                                         William I. Arbuckle
                                         U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALVIN E. BRACKBILL, | ) | CIVIL NO. 1:17-CV-1046 |
| Plaintiff | ) | |
| | ) | (WILSON, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| STEPHEN J. RUFF, *et al.,* | ) | |
| Defendants | ) | |

NOTICE OF RIGHT TO OBJECT

The Parties are further placed on notice that pursuant to Local Rule 72.3:

**Any party may object to a magistrate judge's proposed findings,** recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition **within fourteen (14) days** after being served with a copy thereof. Such party **shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections** which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. **The briefing requirements set forth in Local Rule 72.2 shall apply.** A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Date: August 31, 2021         BY THE COURT

                                      *s/William I. Arbuckle*
                                      William I. Arbuckle
                                      U.S. Magistrate Judge